[Crim. No. 888.    Third Appellate District.—June 17, 1926.]

## THE PEOPLE, Respondent, v. J. HEWITT, Appellant.

[1] CRIMINAL LAW—ROBBERY—GRAND LARCENY—VALUE OF PROPERTY
TAKEN.—The crime of robbery, like that of grand larceny, when
the property has been taken from the person of another, does
not depend upon the value of the property taken.

[2] ID.—ROBBERY—DESCRIPTION OF PROPERTY—PLEADING—ABSENCE OF
DEMURRER—WAIVER—PRESUMPTIONS.—Where an information clearly
states the crime of robbery "of a certain sum of money," and
fails to give a more particular description of the character of the
property alleged to have been taken, and no demurrer is inter-
posed, it must be assumed that any special objection which might
be raised to the pleading is waived by the failure to demur.

[3] ID.—ABSENCE OF WITNESS—DILIGENCE—ADMISSION OF TRANSCRIPT
—EVIDENCE.—In this prosecution for robbery, it cannot be said,
as a matter of law, that there was not a sufficient showing of
diligence to have justified the action of the trial court in permit-
ting the transcript of the testimony of the complaining witness
given at the preliminary examination to be read to the jury.

[4] ID.—CONSTRUCTION OF SECTION 686, PENAL CODE.—The "due dili-
gence" required by section 686 of the Penal Code does not mean
or require that the entire state shall be searched for an absent
witness or a subpoena sent to every county in the state with
instructions to the officers thereof to make a search for the wit-
ness, and, therefore, no such showing is required to be made as
a prerequisite to or foundation for the allowance of the deposi-
tion of the absent witness taken at the preliminary examination
at the trial.

[5] ID. — AUTHENTICATION OF TRANSCRIPT — INSUFFICIENCY OF OBJEC-
TION — APPEAL — PRESUMPTIONS. — In such prosecution, an objec-
tion to the introduction of the transcript of testimony given by
the complaining witness at the preliminary examination on the
ground that it was "not the best evidence" was not sufficiently
specific to raise the issue of the "proper authentication" of such
transcript; and where the record on appeal does not show that
the transcript was not properly certified, it will be presumed on
appeal, in support of the ruling of the trial court, in the absence
of specific objection on the ground of want of a proper certificate,
that the transcript was properly specified.

1.   See 22 Cal. Jur. 841; 23 R. C. L. 1140.
2.   See 22 Cal. Jur. 848.
4.   See 8 Cal. Jur. 131.

[6] ID.—VERDICT—EVIDENCE.—In such prosecution, the contention that the verdict of guilty does not derive sufficient support from the evidence is untenable.

[7] ID.—ADMISSIONS—INSTRUCTIONS.—In such prosecution, no prejudicial error was committed in refusing to give a requested instruction that "The jury is instructed that with respect to all verbal admissions it may be observed that they ought to be received with great caution. Such evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake, as the party himself being either misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It also frequently happens that the witness by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say."

[8] ID.—ROBBERY—GRAND LARCENY—INSTRUCTIONS.—While larceny is essentially one of the ingredients of the crime charged in the information, yet where the evidence without conflict shows that the larceny or felonious asportation of the property from the person of the complaining witness was accomplished by means of force, the distinctive crime of grand larceny is swallowed up by the more aggravated crime of robbery, and in such case an instruction that the crime of grand larceny being, abstractly, within the crime of robbery, it was within the legal discretion of the jury to find the accused guilty of grand larceny would not be pertinent to the case as made by the proofs.

---

(1) 36 C. J., p. 737, n. 54, p. 804, n. 87; 34 Cyc., p. 1798, n. 17, 18.
(2) 31 C. J., p. 822, n. 18, p. 823, n. 19; 34 Cyc., p. 1804, n. 48.    (3)
16 C. J., p. 758, n. 57, p. 759, n. 76.    (4) 16 C. J., p. 758, n. 57.
(5) 16 C. J., p. 759, n. 77; 17 C. J., p. 58, n. 17, p. 68, n. 34, p. 69,
n. 38, p. 222, n. 24, 25.   (6) 34 Cyc., p. 1808, n. 78.   (7) 16 C. J.,
p. 1002, n. 15, p. 1004, n. 37; 17 C. J., p. 349, n. 93.   (8) 16 C. J.,
p. 1043, n. 36, p. 1045, n. 39; 17 C. J., p. 350, n. 95; 36 C. J., p. 754,
n. 97; 34 Cyc., p. 1796, n. 6, p. 1813, n. 6.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial.   Charles O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Wallace Shepard for Appellant.

---

7.  See 8 Cal. Jur. 305.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The accused was convicted in the superior court in and for the county of Sacramento of the crime of robbery. He appeals from the judgment of conviction and an order denying his motion for a new trial.

The point first urged for a reversal is that the information upon which the defendant was tried and convicted is "fatally defective" in that it does not describe with sufficient particularity or definiteness the character of the property alleged to have been taken by the defendant or state its value. The information is as follows:

"The said J. Hewitt on or about the 2nd day of May A. D. 1925, in the said County of Sacramento, in the said State of California, and before the filing of this information, did then and there wilfully, unlawfully, feloniously and forcibly take from the person, possession and immediate presence of one V. Fink, a certain sum of money, the amount of which is to the District Attorney unknown, and of the personal property of said V. Fink, which said taking was then and there without the consent and against the will of the said V. Fink and was then and there accomplished as aforesaid by means of force used upon and against the said V. Fink by the said defendant, and by then and there putting the said V. Fink in fear, contrary to the form, force and effect of the Statute in such case made and provided, and against the peace and dignity of the People of the State of California."

The specific objection to said pleading is that it does not describe the particular kind and denomination of the money and the amount thereof taken from Fink, the complainant, and it is hence argued that under the information the defendant might be put upon trial for a different offense from that with which it was the intention to charge him; that the offense is not so described as to protect the defendant, in case of his conviction or acquittal under the information, against a second or subsequent prosecution for and conviction of the same offense; that the information is so vague and uncertain in the particular mentioned that it fails sufficiently to inform the defendant of the particular

offense attempted to be charged or the particular transaction upon which said offense is founded to enable him to prepare a defense; that "the offense must be described with such particularity that a reviewing court, after conviction, may decide from the record whether the facts as proved were sufficient to warrant the conviction and support the judgment."

[1] The crime of robbery, like that of grand larceny, when the property has been taken from the person of another, does not depend upon the value of the property taken. (Pen. Code, sec. 487.) It would seem, therefore, that, in charging robbery, or grand larceny, when the property is stolen from the person of another, it is not necessary to allege the value of the property taken. [2] Still we will not say that where robbery is charged that a sufficient description of the property taken should not be given in the information or indictment, where such description can be given, to apprise the accused of the particular property he is charged with having taken, and thus enable him the better to defend against the charge. No demurrer, however, was interposed to the information, and, as it clearly states the crime of robbery, it must be assumed that any special objection which might have been raised to the pleading was waived by the failure to demur. A like objection under a similar situation arose in the case of *People* v. *Chewey Ying Git*, 100 Cal. 437 [34 Pac. 1080]. The charge there, as here, was robbery, but the several varieties of property alleged to have been taken were not specifically described in the information but were therein referred to by their common or generic names, to wit: "money, jewelry and hair ornaments." The supreme court, in denying the validity of the objection thus urged, said:

"The authorities hold almost universally that the description of the property taken in robbery is required to be equally specific with that required in larceny. Prior to the amendment of 1880 to our Penal Code a much greater degree of particularity was required in this respect than at present. By section 967 it is now provided that in an indictment or information for the larceny or embezzlement of money, bank notes, etc., it is sufficient 'to allege the larceny or embezzlement . . . to be of money, bank notes,

. . . without specifying the coin, number, denomination, or kind thereof.'

"This statute does not in terms apply to cases of robbery, but as the latter crime is but larceny from the person accomplished by force or fear, and as the same reasons exist for the modification of the rule in such cases, it may well be held that a rule which often required impossibilities in description, the existence of which courts often regretted as tending to thwart rather than promote justice, should be modified. Be this, however, as it may, after judgment in an action without objection, whether in a civil or criminal case, a pleading which states a cause of action or offense, but states it defectively, cannot be successfully attacked. It is not in such cases a defective allegation but a total lack of allegation which renders the judgment void, and hence open to attack.

"There is here an attempt to describe the personal property taken, a lame one it must be confessed, but, imperfect though it be, it is nevertheless such an one as will support a judgment.

"Wharton on Criminal Pleading and Practice, quoting Blackburn, J., says, 'that where an averment which is necessary to support a particular part of the pleadings has been imperfectly stated, and a verdict on an issue involving that averment is found, and it appears to the court after verdict, that unless this averment were true the verdict could not be sustained, in such case the verdict cures the defective averment, which might have been bad on demurrer,' and, in this respect, there is no distinction between the pleadings in civil and criminal proceedings. (Sec. 760; *People* v. *Swenson,* 49 Cal. 388.)"

In the case of *People* v. *Cox,* 40 Cal. 275, cited by defendant, in which the charge against the accused, a clerk, was embezzlement of the sum of eight hundred dollars received in the course of his employment as such clerk, it was held that the indictment did not properly state the offense, for the reason that the money alleged to have been embezzled was not described with the particularity with which that species of property is capable of being described—that is, that it was not described as "lawful money of the United States," or as gold or silver or specifying the denomination thereof. In deciding the case, the supreme court, by Wallace, J., made the following significant suggestions:

"For obvious reasons it may be difficult to give such a description of property embezzled, particularly where the offense is committed by a person in the course of a continuous employment, as a clerk, cashier, or the like; but I find nothing in the law authorizing us to make any distinction upon this point between offenses of larceny and embezzlement. It would promote the ends of justice, perhaps, if a statute should be passed to correct the law in this particular, as has been done in England, where it is enacted by Stats. 7 and 8, Geo. IV., Ch. 29, Sec. 48, that 'it shall be sufficient to allege the embezzlement to be of money, without specifying any particular coin or valuable security,' etc."

As is to be observed from the above-quoted extract from *People* v. *Chuey Ying Git,* the legislature did change the law "in this particular," and, therefore, the Cox case is not applicable to this or other like cases in which the indictment has been filed since the amendment of section 967 of the Penal Code, as above shown.

In the case of *People* v. *Ammerman,* 118 Cal. 23 [50 Pac. 15], also cited by defendant, the objection to the information was that it did not state the crime of robbery because it contained no allegation as to the ownership of the money which it was alleged was taken by the accused from the person of the complaining witness by force. That, however, is not this case. The information here, it will be seen, states that the money alleged to have been taken was the property of the party from whom it is alleged to have been taken.

The case of *People* v. *Hunt,* 251 Ill. 446 [36 L. R. A. (N. S.) 933, 96 N. E. 220], is squarely in line with the position of defendant here. But it does not appear from the opinion in that case whether the state of Illinois has, or, at the time of the rendition of the judgment in the case, had a statute (sec. 967, Pen. Code) similar to ours as it was amended by the legislature of 1880 and as it was construed, as so amended, in *People* v. *Chuey Ying Git, supra.* We may assume that the common-law rule requiring a definite description of the property alleged to have been taken in an indictment or information charging robbery or larceny prevailed in said state at the time the case of *People* v. *Hunt* arose. Even, however, if it be true that the rule in Illinois was then and is now the same as it is now declared in sec-

tion 967 of our Penal Code, the Hunt case would not be binding upon the courts of this state, nor even persuasive, in view of our own decisions to the contrary.

[3] The point next submitted for a reversal is founded upon the ruling of the trial court admitting in evidence the transcript of the testimony given by the complainant, Fink, before the magistrate at the preliminary hearing of the charge, it having been made to appear at the trial that said Fink was not present when the case was called for trial nor during the trial. The objection to the transcript was based on the ground that the requisite diligence was not exercised by the officers to subpoena and so secure the presence of Fink at the trial. (Pen. Code, sec. 686.) The record shows that on the twenty-ninth day of May, 1925, the case was set down for trial on June 19, 1925, at 10 o'clock A. M.; that on the nineteenth day of June, 1925, by agreement of counsel on both sides, the court ordered a postponement of the time of trial to the thirteenth day of August, 1925, and the trial of the cause was then set for that day; that on the eighth day of June, 1925, one Ed Nicholas, then county detective in and for the county of Sacramento, and, as such officer, attached to and connected with the office of district attorney of said county, caused a subpoena to be issued out of the superior court of said county for said Fink. The record further shows that said Fink was an itinerant, that his usual occupation was that of a sheepherder, and that he had been in California but a few days prior to the time at which he is alleged to have been assaulted and robbed of his money by the defendant; that, consequently, he had no permanent residence anywhere. So far as was known, he had no relatives or acquaintances in Sacramento County or in this state, except such acquaintances as he might have made within the brief period of time during which he was in Sacramento or elsewhere in the state prior to the date of the trial. Nicholas stated, however, that he located Fink "at a ranch out by Rio Linda. I went out there," testified Nicholas, "and he had left there, and I went to, I guess, two dozen lodging houses in the lower end of town (meaning Sacramento), and to the address given at the preliminary examination. I have also visited most of the employment offices in the lower end of town (referring to Sacramento), particularly the Enter-

prise Employment Agency, where he has been going out of
on different jobs, and I have been unable to locate him
Q. By the Court: Did you inquire at these lodging houses?
A. I did. I looked at the register and also inquired of the
landlady. . . . They (the landladies of said houses) don't
know him, and there was no name—I looked on the registers,
and I have looked it up all over, and I can't find no trace
of it. He is well known at the Enterprise Employment
Agency. Q. But they don't know his address at the present
time? A. They haven't it. I was down the last time
yesterday. Q. And some inquiries were made of his former
employer, Mr. Johnson, near Roseville? A. Yes, sir, there
has been correspondence with Mr. Johnson at Roseville.
Q. What does he say about it? A. He doesn't know his
whereabouts, haven't heard from him. . . . Q. You haven't
been able to get in touch with Mr. Fink, at all, or have you
been able to serve the subpoena upon him? A. I have not.
Q. Were you able to find anybody that was acquainted with
him? A. I found somebody out at the ranch where he had
been employed and the owner of the Enterprise Employ-
ment Agency is well acquainted with him. He remembers
him and sent him out to the job he was on just—I think he
quit around the first of June. . . . Q. You know of no other
place that you would be likely to find the witness, Mr.
Fink? A. I do not. Q. By the Court: Do you know of
anybody else who is acquainted with him or did you hear of
anybody that is acquainted with him that you haven't in-
quired from? A. I do not. Q. You have inquired from
everybody that you have learned that knew the witness?
A. I did. Q. And you inquired from, you say, about two
dozen lodging houses in town? A. Yes. I think he gave
his number at the preliminary examination—it is there—
I think it is 128—or the number there; I looked all over
J and K Street and all those numbers. It is some number
he gave there, and I think it is the wrong number, but I took
that number on the other streets—looked it up particularly
in those places. . . . It may be that Mr. Green (assistant
district attorney) has referred me to some number. I
wouldn't say now that it was in the transcript. . . . I read
this transcript over in regard to the address of Mr. Fink
sometime ago. I went down to the address given in the

transcript and endeavored to locate him by inquiring around, and couldn't find him. Q. By the Court: He isn't there? A. No, he isn't there. . . . The time I went out to the sheep ranch and endeavored to locate him was some weeks past. Since that time I have inquired around occasionally." The witness stated on cross-examination that after his first visit to the sheep ranch of one Fuski, who had employed Fink a short time after the preliminary examination, through the Enterprise Employment Agency at Sacramento, in search of the complainant, he did not again go to said ranch for the reason that he knew that said Fuski employed sheepherders and other laborers through the Enterprise Employment Agency and that he took the matter up with said agency. He further repeated that his visit to Fuski's ranch was a week or so prior to the nineteenth day of June, 1925. It was further shown, before the transcript was introduced in evidence and read to the jury, that the defendant was represented, at the preliminary hearing by an attorney, who, in behalf of the defendant, cross-examined the witness Fink. We cannot say, as a matter of law, that the above is not indicative of a sufficient showing of diligence to have justified the action of the trial court in permitting the deposition of Fink to be read to the jury. The officers seem to have made every effort which reasonably could be expected or demanded under the circumstances of the case to find and subpoena Fink and so cause him to be in attendance at the trial. The witness, as shown, was a comparative "newcomer" to Sacramento, had no acquaintances in that city or the state except such persons as he had met during the short period that he had been in that city, and, besides, was an itinerant laborer, having, therefore, no permanent place of abode. The officer to whose hands the subpoena was committed for service made inquiries at every place where his best information indicated that the witness might be found, if he could be found at all, and made inquiries with a view of ascertaining his whereabouts of all persons whom he (the officer) was informed might have any knowledge of where the witness might be found. **[4]** The "due diligence" required by section 686 of the Penal Code, does not mean or require that the entire state shall be searched for an absent witness or a subpoena sent to every county in the state with instructions to the officers thereof to make

a search for the witness, and, therefore, no such showing is required to be made as a prerequisite to or foundation for the allowance of the deposition of the absent witness taken at the preliminary examination at the trial. The rule is well stated in *Heintz* v. *Cooper,* 104 Cal. 668, 670 [38 Pac. 512], as follows:

"Diligence is a relative term incapable of exact definition. What would amount to due diligence under one state of facts would fall absolutely short of it under another and different state of facts. It depends, therefore, so essentially upon the particular circumstances of each case, with all their distinct and varying phases and bearings, as they have appeared to the lower court at the trial and throughout the conduct of the cause, in determining whether diligence has been used in any particular instance, that this court should hesitate to disturb a ruling upon this ground where it has any substance whatever upon which to rest. The presumption is that the discretion has been properly exercised, and that presumption must be overcome by a clear want of facts before the order will be disturbed." (See *Jones* v. *Singleton,* 45 Cal. 92; *Baker* v. *Joseph,* 16 Cal. 180; *Kenezleber* v. *Wahl,* 92 Cal. 202 [28 Pac. 225]; *People* v. *Johnson,* 13 Cal. App. 779 [110 Pac. 965]; *People* v. *Boyd,* 16 Cal. App. 130 [116 Pac. 323].)

[5] The ruling admitting the deposition of Fink in evidence is further declared to involve error for the reason, as is the claim, that it was not "properly authenticated." No specific objection to the introduction of the deposition was made by defendant at the trial on that ground, although, in addition to the objection that the "due diligence" required by the statute had not been shown, the objection that the transcript of the testimony offered was "not the best evidence" was also made. We think the objection was not sufficiently specific to raise the issue upon that proposition or to render a review thereof by this court of any avail to the defendant. A specific objection—that is, an objection directly specifying that the deposition was not "authenticated" as required by law—should have been made so that the court could have directly and specifically ruled thereon, and, furthermore, so that the district attorney could, if able to do so, have obviated the objection by showing that, as a matter of fact, the deposition was duly authenticated.

The record, however, does not show that the deposition was not properly certified. As is said in *People* v. *Buckley*, 143 Cal. 375, 383 [77 Pac. 169, 173], "even where the record entirely fails to affirmatively show that the reporter properly certified the transcript of his shorthand notes, but does not show that there was no such certificate, it will be presumed in this court, in support of the ruling of the court below, in the absence of specific objection on the ground of want of a proper certificate, that the transcript was properly certified by the reporter." (See *People* v. *Reilly*, 106 Cal. 648 [40 Pac. 13]; *People* v. *Witty*, 138 Cal. 576 [72 Pac. 177]; *People* v. *Grundell*, 75 Cal. 301, 304 [17 Pac. 214].) That the transcript introduced in this case, however, accurately represented the testimony or deposition given by Fink before the committing magistrate was shown by the shorthand reporter who took and transcribed said deposition, he having been called by the People for that purpose and thus orally verified said transcript without objection by defendant.

[6] The contention that the verdict does not derive sufficient support from the evidence is wholly untenable.

Fink, whose home was in the state of Idaho, and who, as above stated, was, at the time of the alleged robbery, a recent arrival in California, went to the city of Sacramento on the first day of May, 1925. On the succeeding day (May 2d) he met the defendant for the first time. Just at what hour of that day they first met is not shown; but it appears that they became apparently quite companionable, and, paradoxical as the statement may seem in these days of strenuous prohibition (?), they had a few drinks together of intoxicating liquor, not a sufficient number, however, so Fink testified, to produce intoxication. The early evening of that day found them together in a pool-hall near Third and L Streets and engaged together in playing a game of pool. After a few games were played defendant, so Fink testified, accused the latter of owing him (defendant) a dollar. Fink denied the indebtedness and left the pool-room and stepped out upon the sidewalk. He was immediately followed by defendant, who was still insisting that Fink owed him a dollar. Fink then said to him: "I would rather give you a dollar than to have trouble," whereupon defendant struck Fink a blow of sufficient force to knock

him down upon the sidewalk and to produce temporary unconsciousness. The defendant thereupon immediately kneeled and bent himself over the body of Fink, placed his hands in the latter's trouser's watch pocket and abstracted therefrom, so one witness testified, something that bore the appearance of paper. Defendant, so other witnesses testified, then arose and started to walk rather hastily toward K Street in said city. Fink testified that before he was knocked down by defendant there were in the watch pocket of his trousers three twenty-dollar bills; that he had occasion to examine that pocket about an hour prior to the time he was knocked down; that, when he regained consciousness, only a few minutes after being struck, he immediately examined said pocket and then discovered that the three twenty-dollar bills were missing. He stated that, while he had taken several drinks of intoxicating liquor on the 2d of May, he was not intoxicated at the time he was playing pool with defendant or when struck down by the accused.

Elton J. Plato, city purchasing agent of the city of Sacramento, testified that in the early part of the evening of May 2d, he and his family were taking an automobile ride; that he drove down Second Street from Second and K Streets to L, and thence to Third and L. Just as he was approaching the latter corner, and when only a few feet therefrom, he saw defendant strike Fink and "knock him down"; that he thereupon "slowed down," and saw defendant lean over Fink, and that he then brought his car to a full stop and observed defendant "feeling about the man"; that "defendant started to get away pretty fast . . . and I chased the defendant and overtook him on K Street, between Third and Fourth." Several other parties also followed the defendant to the point mentioned on K Street. These parties held him until a policeman, in response to a telephone call, arrived on the scene and took defendant in charge. Plato testified that, before the officers arrived and while he "was struggling to get away," the defendant, addressing his captors, said: "Let me go; I'll give you the dough." Plato went to the police station and was present when defendant's person was searched by the officers; saw the officers take from the accused a twenty-dollar bill and, the witness thought, "some silver."

Fred O. Turner, an employee of the S. P. Company in Sacramento, saw defendant and Fink fight near Third and L Streets at the time referred to by the witness Plato. He testified that the defendant "knocked Fink down," the latter falling to the sidewalk face downward; that defendant then reached down, "rolled him (Fink) over" and put his hand in Fink's trousers watch pocket and "take something out of his pocket, a paper or papers. I couldn't see whether it was money or what not. And," continued Turner, "from taking it out of his (Fink's) pocket, he (defendant) goes to work and shoves it into his watch pocket." After this occurrence, the defendant remarked, so Turner testified, "You'll pay me now." Turner then started in the direction of K Street, Turner, with others, following, overtaking and stopping him on K Street, and holding him until the arrival of an officer. Turner stated that he, on the suggestion of Plato, held the defendant until Plato could go to the phone and call for an officer; that, while Plato was thus employed, the defendant said to the witness (Turner) : " 'Don't arrest me; I'll give you the money; I'll split with you.' Then after he said that," Turner proceeded, "he says: 'You let me loose and I'll pay the money back.' That is the words he used." The officer then arrived, stated Turner, and took the defendant to the police station.

A. H. Selander was present at Third and L at the time defendant struck and knocked Fink to the sidewalk. He testified that he saw defendant stoop and put his hand in the watch pocket of Fink's trousers; that he also followed defendant when he retreated from the scene of the trouble toward K Street and was present when the witness Turner got hold of defendant; that he heard defendant say to Turner that he would "split with Turner if he (Turner) would let him (defendant) go"; that he also heard defendant say at that time, addressing Turner: "I will pay you back, if you let me go."

Policeman Warren testified that, on searching defendant at the police station, he found one twenty-dollar bill only, a few pieces of silver and some small "trinkets."

Thus, it would seem, the People made a very strong case against the accused. The fact, however, that but one twenty-dollar bill was found in the possession of the defendant when he was searched by the officer after his arrest, and the fur-

ther fact that defendant was at all times within sight of his pursuers while he was going toward K Street, and while going toward said street was not seen to do anything which would indicate that he had disposed of any article then in his possession, are stressed by defendant as circumstances which strongly tend to show that Fink testified to a falsehood when he stated that, just prior to the assault, he had in his possession and upon his person three bills of the denomination of twenty dollars. But the apparent discrepancy thus arising constituted a matter for the jury to consider and resolve. The jury, believing as presumptively they did, the testimony of Turner, were warranted in concluding and finding that the defendant took from Fink's pocket something which had the appearance of being paper of some kind, and further concluding from that circumstance and the testimony of Turner, Plato, and Selander that he offered to "split" or return the money, if allowed to go, that the paper so taken was paper money. This was a sufficient predicate for their verdict. In other words, if they believed beyond a reasonable doubt, as well they could so believe from the circumstances as disclosed to them, that some money was abstracted from Fink's pocket by defendant, then with the facts showing the circumstances under which said act of taking was done, they were legally authorized to find that defendant had committed robbery, even though they might have believed that Fink was mistaken or told an untruth as to the amount of money he had on his person at the time, and regardless of whether the amount was $60 or only $20, or even less.

[7] Lastly, it is contended that the court erred, to the prejudice of the rights of the accused, by refusing to allow, upon his request, the following instructions:

"The jury is instructed that with respect to all verbal admissions it may be observed that they ought to be received with great caution. Such evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake, as the party himself being either misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It also frequently happens that the witness by unintentionally altering a few of the expressions really used, gives an effect to

the statement completely at variance with what the party actually did say.''

''The Court instructs the jury that the crime of robbery includes the crime of larceny, and that under an informa- tion for the first offense of robbery the jury may find the defendant guilty of larceny if they entertain a reasonable doubt as to which of the two offenses he was guilty.''

The first of the above instructions is based on subdivision 4 of section 2061 of the Code of Civil Procedure, which pro- vides that upon the proposition contained in said subdivision, as well as upon the several propositions set forth in six other subdivisions of said section, the jury ''is to be in- structed by the court on all proper occasions.'' Said sec- tion 2061, in so far as it purports to authorize judges to give to juries an instruction based on subdivision 4 thereof, has been held to be in direct contravention of section 19 of article VI of the constitution to the effect that juries shall not be charged or instructed with respect to matters of fact. (*Kauffman* v. *Maier*, 94 Cal. 269, 273 [18 L. R. A. 124, 29 Pac. 481]; *People* v. *O'Brien*, 96 Cal. 180 [31 Pac. 45]; *People* v. *Wardrip*, 141 Cal. 225, 231 et seq. [74 Pac. 744]; *People* v. *Moran*, 144 Cal. 48, 64 [77 Pac. 777].) In these and subsequent cases, however, it was held that either the act of giving or the act of refusing to give the instruc- tion would not be held to be sufficient to justify the reversal of a judgment, since the proposition contained in subdivision 4 of said section is a ''mere commonplace,'' or, as is said in *Kauffman* v. *Maier, supra,* the fact that the statements of a witness as to what some other person has orally said to him are liable to be erroneous and should, therefore, be received with caution, involves a matter of common knowl- edge, and the assumption must always be that a jury, in con- sidering the testimony of a witness purporting to involve a repetition of any oral statement which the defendant in a criminal or any party to a civil action or a witness in either has made to another with respect to the case or any issue directly involved or incidentally arising therein, would know as well as the judge or any other person that it would be their duty to view it with that degree of caution which the circumstances of the particular case or those under which the oral statement was made justly exacted or required. (See, in addition to the cases above named, *People* v. *Raber,*

168 Cal. 316, 320 [143 Pac. 317], and cases referred to therein.)

The instruction last hereinabove quoted contains a correct abstract statement of the law with respect to the elements of the crime of robbery. [8] Larceny is essentially one of the ingredients of the crime charged in the information, and yet where, as here, the evidence, without conflict, shows that the larceny or felonious asportation of the property from the person of the complaining witness was accomplished by means of force, then the distinctive crime of grand larceny is swallowed up by the more aggravated crime of robbery, and in such case an instruction that, the crime of grand larceny being, abstractly, within the crime of robbery, it was within the legal discretion of the jury to find the accused guilty of grand larceny, would not be pertinent to the case as made by the proofs. The defendant himself did not testify in this case and no other witness was produced on his behalf to say that the substantially uniform story of all the eye-witnesses to the commission of the crime and who testified for the prosecution as to the circumstances under which and the violent means by which the defendant despoiled Fink of his money was not true.

No other assignments of error are presented. The judgment and the order appealed from, for the reasons hereinabove given, are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1926.