141 Cal.App.2d 143 (1956)
THE PEOPLE, Respondent,
v.
ROBERT GALLEGO LUJAN, Appellant.
Crim. No. 5518. 
California Court of Appeals. Second Dist., Div. Two. 
Apr. 25, 1956.
 Robert Gallego Lujan, in pro. per., and Forno and Umann for Appellant.
 Edmund G. Brown, Attorney General, and James L. Mamakos, Deputy Attorney General, for Respondent.
 ASHBURN, J.
 Having been convicted of possession of heroin (Health & Saf. Code, 11500), defendant appeals from the judgment and an order denying his motion for new trial. He does not claim innocence or lack of sufficiency of the evidence. His plaint is that there was too much evidence and it was obtained by an illegal search and seizure within the purview of the recent line of decisions which are the progeny of People v. Cahan, 44 Cal.2d 434 [282 P.2d 905].
 On October 8, 1954, four officers attached to the sheriff's narcotic detail were cruising in an automobile on Olympic Boulevard in Los Angeles County when Sergeant Cook recognized defendant's car ahead of them; they passed it, within 12 feet, and he then identified defendant as the driver. Cook had known him since investigating a narcotics matter three years before; he himself had not arrested defendant, but another officer had done so and defendant was convicted of narcotic addiction. According to Cook's information defendant *145 was known as a narcotic addict; he had recently kept defendant's home under surveillance and had arrested for narcotics violations some of the people he had seen come out of that house but what he had found or whether the arrests resulted in pleas or convictions does not appear. When Cook saw defendant on the 8th of October the latter was behind the wheel and appeared to be under the influence of narcotics. The sergeant having had considerable experience in such matters, his car followed defendant to the intersection of Whittier Boulevard and Downey Road, where he stopped for a red signal. The officers came up beside him and he was seen to be in a lethargic condition; very slow in his actions; he dropped his head as he stopped at the intersection; his eyelids appeared to be half closed and he was in a drowsy state. Officers Stoops and Buchanan immediately approached defendant's car, Stoops on the passenger side where defendant's wife was sitting, and Buchanan went to the driver's side and opened the door; Buchanan had his badge in his hand, showed it to defendant and said "you are under arrest." There was a little scuffle; as defendant looked at Stoops he made a motion toward his right coat pocket but it had a flap on it and his hand went past the pocket. Stoops grabbed the hand but there appears to have been nothing in it. While this was going on defendant put his foot on the throttle and started forward; Stoops grabbed the gear shift lever and stopped the car. Cook and Buchanan pulled defendant out of his automobile and he dropped to the ground. As they picked him up Stoops made a search of his person, finding in his shirt pocket a rubber finger stall, a type of facility used in narcotic traffic, and in it were five gelatin capsules containing heroin. Defendant was asked how many capsules were in the finger stall and he first said that "a fix" was all that was in there; asked again how many capsules he said five.
 The officers and the Lujans drove to defendant's home, part of them in his car and part in the police vehicle. Before doing so Cook had asked defendant whether he had anything at home; he said "no," that all he had were the capsules in the finger stall and that he was going to use them for himself. Cook asked about looking in his home and he said it was "o.k.," that he did not have anything there. "The Court: You asked him if you could go and search the home? The Witness: Yes. The Court: What did he say? *146 The Witness: He stated that he had nothing at the house and it was all right with him. He stated a couple of times that there was nothing there, and I don't believe he knew there were capsules there." On arrival at the house Mrs. Lujan produced the door key and upon request handed it to Cook who opened the door; all officers and the Lujans entered; the husband and wife were seated in the living room and the search began. Defendant made no objection thereto and said nothing except "you won't find anything" and "all I have is what I had on me." The officers found in a clothes hamper in the bathroom one capsule of heroin; it was located under some clothing; they also found under the bathtub a box containing a number of empty gelatin capsules, and in an upright vacuum cleaner a number of rubber finger stalls.
 It will be observed that the search of the person followed immediately after taking defendant into custody, and its propriety depends upon the validity of the arrest. (People v. Coleman, 134 Cal.App.2d 594, 599 [286 P.2d 582]; People v. Simon, 45 Cal.2d 645, 648 [290 P.2d 531]; People v. Boyles, 45 Cal.2d 652, 656 [290 P.2d 535]; People v. Gorg, 45 Cal.2d 776, 781 [291 P.2d 469].) [1] When acting without a warrant, "the search of defendant's person may be justified only if he was committing or attempting to commit an offense in the officer's presence (Pen. Code, 836, subd. 1), or the officer had reasonable cause to believe he had committed a felony. (Pen. Code, 836, subd. 5.)" (People v. Simon, supra, p. 648.) Of course, reasonable cause does not connote actual knowledge. [2] "It is settled, however, that reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citing cases.] Thus in the present case it is entirely possible that the officer's belief that defendant had narcotics in her possession was fully justified by reliable information obtained by him from others in carrying out his duties." (People v. Boyles, supra, p. 656.)
 [3] Sergeant Cook, who was in charge of the police detail, testified that they stopped defendant for violation of section 506, subdivision (a), of the Vehicle Code, which makes it a felony for any person who is addicted to the use, or under the influence, of narcotic drugs to drive a vehicle upon the highway. Defendant was known to the officers as an addict, he was seen to be under the influence of a narcotic, and he *147 was driving a car. This furnished ample basis for an immediate arrest without a warrant. Search of the person or the automobile, or both, for narcotics would be a normal incident to that arrest and not unrelated to the crime (see People v. Martin, 46 Cal.2d 106, 108 [293 P.2d 52], and People v. Blodgett, 46 Cal.2d 114, 116-117 [293 P.2d 57]). The fact that defendant was later booked, tried and convicted on a more serious charge of possession of narcotics is immaterial. The information and evidence then used had been lawfully obtained and the State was free to employ it in enforcement of the criminal laws in any appropriate proceeding. There is no merit in the contention that the search of defendant's person or the seizure of the heroin found thereon, was unreasonable or unlawful.
 [4] The search of the home followed in a half hour. It was done with the expressed consent of defendant and of his wife who handed the door key to the officer. Such consent, if voluntary, precludes later objection to the search. (People v. Michael, 45 Cal.2d 751, 753 [290 P.2d 852]; People v. Gorg, supra, 45 Cal.2d 776, 782.) [5] But the consent must be a voluntary one and whether it was such presents a question of fact. (People v. Michael, supra, at p. 753; People v. Gorg, supra, at p. 782.) [6] That question in this instance was decided by the trial judge contrary to appellant's contention, and upon evidence which suggests no other conclusion (cf. People v. Michael, supra, p. 753 and People v. Gorg, supra, p. 782), unless it be dictated by the fact that defendant was under arrest and in handcuffs at the time he gave his consent to a search of his home. Our state Supreme Court has not passed upon this specific point. It did, however, reject in Rogers v. Superior Court, 46 Cal.2d 3, 10-11 [291 P.2d 929], the federal rule that a confession made during a period of illegal detention is inadmissible. In so doing it distinguished the Cahan case, supra, upon grounds not pertinent here. The opinion does hold that the fact that a confession is made during an unlawful detention is "only one of the factors to be considered in determining whether the statement was voluntarily made." No good reason appears for holding otherwise as to consent to a search given while under arrest and in handcuffs. When asked if the officers could search the home defendant assented, saying "a couple of times that there was nothing there." During the search he said "you won't find anything. ... All I have is what I had on me." When confronted with the capsule there found he said he did not know it was there, *148 that it must have fallen in the hamper while he was taking a fix. And Sergeant Cook volunteered the opinion that "I don't believe he knew there were capsules there." It would be but natural for one who has been arrested with narcotics on his person and who believes there is none in his home to acquiesce with alacrity to a search of that home; believing that nothing would be found, he would reason that his ready cooperation with the police would have a tendency to smooth somewhat the rocky road lying ahead of him, perhaps forestall a charge of selling, one which may carry a heavier penalty (see Health & Saf. Code, 11712-11713) and much less likelihood of leniency in case of conviction.
 Appellant relies upon Johnson v. United States, 333 U.S. 10, 12-13 [68 S.Ct. 367, 92 L.Ed. 436], which holds that a police officer's entrance into a home after identifying himself and saying, "I want to talk to you a little bit," "was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." (P. 13.) The California Supreme Court declined to follow this and certain other federal precedents, saying that "they point to no compelling solution in the present case." (People v. Michael, supra, 45 Cal.2d 751, 753.) Our conclusion that the mere fact of custody and handcuffs does not per se make a consent to a search involuntary, seems to be foreshadowed by the Michael and Gorg rulings, supra.
 [7] If a contrary result were reached it would not entitle defendant to a reversal, for the evidence seized in the lawful search of his person was abundantly sufficient to support his conviction. He was taken in flagrante delicto. The search of his home (even if unlawful) falls in the same category as the trespass in People v. Boyles, supra, 45 Cal.2d 652, 654; and the evidence being sufficient for conviction without the aid of unlawfully seized items, the ruling in People v. Tarantino, 45 Cal.2d 590, 597 [290 P.2d 505], becomes applicable and requires an affirmance.
 The judgment and order are affirmed.
 Moore, P. J., and Fox, J., concurred.