[Crim. No. 6331.    Second Dist., Div. One.    Feb. 10, 1959.]

THE PEOPLE, Respondent, v. ORAE CORNELL FIELDS, Appellant.

Orae Cornell Fields, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction on a charge of possessing heroin.

In an information filed in Los Angeles County the defendant was charged with violating section 11500, Health and Safety Code, in that on or about November 16, 1957, he possessed heroin. It was also alleged in the information that the defendant had previously been convicted of a violation of section 11500 of the Health and Safety Code on February 23, 1951, and had served a term in prison therefor, and that he had also been convicted of the crime of forgery on April 9, 1953, and had served a term in prison therefor.

The defendant pleaded not guilty and denied the prior convictions. A jury trial was waived and, by stipulation, the matter was submitted upon the testimony contained in the transcript of the proceedings at the preliminary hearing; each side reserving the right to present additional evidence.

The court found the defendant guilty and made no finding as to the prior convictions.

A résumé of the facts is as follows: Officers Hawkins and Miller of the Oxnard police department came to an office of the Los Angeles police department and requested assistance in picking up four or five suspects who were wanted for burglary in Oxnard. One of the suspects was the defendant, however, the officers from Oxnard had no warrant for his arrest. The Oxnard officers inquired of members of the Los Angeles police department if the defendant was known to the Los Angeles police department, or if the Los Angeles police knew him. Sergeant Stephenson of the Los Angeles police department gave Officer Lucarelli, of the same department, the defendant's address. Also, a "mug" of the defendant was pulled from the Los Angeles police department files. The Oxnard policeman told Officer Lucarelli that the men they were

seeking had been identified in a series of "till taps" and that they wanted the defendant upon a charge of burglary, and for questioning and investigation. (Officer Lucarelli testified, "My understanding of a till tap is that when two or three people are at the checkstand, one of them preoccupies the clerk after she has the drawer open and the other will grab whatever money there is and the other will take off.") There was another man with the Oxnard policemen, a civilian, who was not known to Officer Lucarelli but was known to other officers in the Los Angeles police department. The man made some statements with reference to the burglary in Oxnard while he was in the presence of Officer Lucarelli. Officer Lucarelli talked with the man and asked him if he knew about the defendant and whether the defendant was a user of narcotics, and the man stated that the defendant was a user of narcotics.

Lucarelli and Miller went to the house of the defendant about 2 o'clock a.m. on November 16, 1957. Officer Hawkins and the man above mentioned stayed in the car which was parked on the street. Lucarelli directed Miller to go to the back door of the house, and he, Lucarelli, then went to the front door. He did not turn the door knob or handle but knocked rather loudly, and in so knocking the door came open a small distance. The door was then pushed all the way open and Officer Lucarelli said "Orae C. Fields, police officers." No one answered at first and the officer knocked and "hollered" out again. A male voice then answered, "Who is it?", and Lucarelli answered, "Police officers. Where are you at?" The male voice answered, "I am here in the bedroom." Officer Lucarelli turned on his flashlight and then entered the house and went to the bedroom, identified himself, and told the defendant that he was wanted for burglary and arrested him. The defendant was also asked "if he had any stuff." Officer Miller, previous to the occasion just described, had come around from the back of the house and was in the bedroom with Officer Lucarelli and the defendant. The defendant was in bed with his wife.

The defendant was asked "if he had any stuff in the house," and he answered, "No, go ahead and look." Officer Lucarelli told defendant, in effect, that if they "found stuff in the house" when the defendant had stated he did not have anything there, that the officers would have to arrest the people in the house as it would belong to somebody in that facility.

Officer Lucarelli, in the presence of the defendant then started to make a search of the bureau drawers and of the

defendant's pants in the bedroom. There was a wallet in one of the dresser drawers containing a paper bindle enclosing a white powder, later identified and found to be heroin. The officer also found a medicine dropper and a hypodermic needle in the dresser, wrapped in white paper. The defendant was asked whether the heroin belonged to him and he said that it did, and he further stated that he had bought it earlier on Saturday for $10 and that his wife knew nothing about it. The defendant did not take the witness stand and testify in his own behalf, nor did he, through other witnesses, offer any explanation of the presence of the heroin or the hypodermic needle.

The defendant asserts that the evidence was obtained by an unlawful search and seizure.

In our opinion the search of the defendant's bedroom, under the circumstances, was lawful. The defendant gave his consent. See *People* v. *Michael*, 45 Cal.2d 751, at page 754 [290 P.2d 852], wherein the court said, with reference to a similar situation: ''Under these circumstances, to hold as a matter of law that the evidence was produced in response to an unlawful assertion of authority would seriously hamper officers in the reasonable performance of their duties. Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority.''

As heretofore indicated, the defendant did not take the witness stand to deny any of the statements of the officers; nor did he call his wife as a witness, although she was present and seemingly heard most of what was said in the bedroom. It is clear from the record, in our opinion, that consent to the search was given. The prosecution supplied the proof of the consent to the satisfaction of the trial court. (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469] ; *People* v. *Roberts*, 47 Cal. 2d 374, 377 [303 P.2d 721].)

In the first place, it is the province of the trial court to determine the fact as to whether or not consent was given. The trial judge determined in effect that in the light of all the circumstances, the consent was voluntary and was not in submission to an express or implied assertion of authority.

(See *People* v. *Michael, supra.*) ■ As said in *People* v. *Garnett,* 148 Cal.App.2d 280, at page 284 [306 P.2d 571]: "The fact that the officer having defendant in custody inquired for permission to search does not destroy its significance as a voluntary consent. (Citing case.) The officer premised appellant's consent upon the latter's assertion that he had done nothing unlawful." (See also *People* v. *Lujan,* 141 Cal.App.2d 143, 147 [296 P.2d 93]; *People* v. *Robinson,* 149 Cal.App.2d 282, 284 [308 P.2d 461]; *People* v. *Galle,* 153 Cal.App.2d 88, 90 [314 P.2d 58].)

■ It was succinctly stated in *People* v. *White,* 159 Cal. App.2d 586, at page 592 [324 P.2d 296]:

"In urging this point defendant ignores the clear evidence in the record showing a free and voluntary consent on the part of the defendant to search his room; and the well-known rule that it is not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when the search is made with defendant's consent. In *People* v. *Burke, supra,* the defendant urged a similar point and the Supreme Court at page 49, stated: 'It is not necessary here, however, for the People to show that the search and seizure were reasonable as incident to proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained.' In that case, the officer said to the defendant, 'You don't mind then if we search your apartment do you?' and the defendant answered, 'No, go ahead.' Whether in a particular case consent was voluntarily given is a question of fact to be determined in the light of all the circumstances (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]; *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852])."

■ It was set forth in *People* v. *Torres,* 158 Cal.App.2d 213, at page 215 [322 P.2d 300]:

"A search of a house with the express, free and voluntary consent of a householder suspected of possessing narcotics is neither unreasonable nor unlawful. It follows that contraband found and seized in the course of such a search may lawfully and properly be received in evidence against the accused. (Citing cases.) It is true as pointed out in *People* v. *Michael, supra,* that one need not forcibly resist an officer's assertion of authority to search, but if he freely consents to a search, then neither the search nor the seizure of evidence found in the course thereof is unreasonable. As the court there stated (45 Cal.2d at p. 753), 'Whether in a particular

case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.' To the same effect are *People* v. *Lujan*, 141 Cal.App.2d 143 [296 P.2d 93], and *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469]. Since the question is one of fact primarily for the trial court's determination, the finding of that court, supported by substantial evidence, is binding upon an appellate court. (Citing cases.)''

In this case the prosecution introduced sufficient and proper evidence to establish without question that the defendant had previously been convicted of the two felonies charged as prior convictions in the information. The judge was fully informed of the facts with reference to the defendant's background, because at the time of hearing the defendant's application for probation (for which he was wholly ineligible) the judge remarked, ''I've gotten word parole has been suspended and there has been an order to return this man to the State Prison at this time''; and further the judge said, ''There doesn't seem to be much that can be done with this man, from the past record, counsel.''

The defendant was then sentenced as a first offender. Had he been properly and legally sentenced, his minimum term under section 11712 of the Health and Safety Code would be not less than two years nor more than 20 years. In other words, the defendant in this case is now, by reason of the judge's failure to find as to the prior convictions (pursuant to Pen. Code, § 1158), permitted to serve a sentence which can be considerably less than that required and set forth in the statutes.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.