[Crim. No. 6284.   Second Dist., Div. One.   Mar. 2, 1959.]

THE PEOPLE, Respondent, v. OTIS HOLLY HORNES et al., Appellants.

Sheldon Berlin, under appointment by the District Court of Appeal, Otis Holly Hornes and Bruce A. McCollin, in pro. per., for Appellants.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendants were accused of the crime of robbery while armed with a deadly weapon. It was also alleged that each defendant had suffered a prior conviction of robbery and had served a term of imprisonment therefor. Defendants pleaded not guilty. Trial by jury was duly waived and by stipulation the cause was submitted on the transcript of the preliminary examination with each side reserving the right to offer additional evidence. Defendants were adjudged guilty of robbery which the court found to be robbery of the first degree. No finding was made as to the prior conviction charged against each defendant. Their motions for new trial were denied and each was sentenced to state prison.

Defendant Hornes appeals from the judgment and order denying his motion for a new trial. Defendant McCollin appeals from the judgment and sentence. Since no appeal lies from the sentence as such (*People* v. *Gallardo,* 41 Cal.2d 57, 60 [257 P.2d 29]), the attempted appeal therefrom must be dismissed.

We regard the following as a fair epitome of the factual background surrounding this prosecution.

On the early morning of October 19, 1957, Edward Rollins was on duty as the attendant at a service station located on Florence Avenue, in the city of Los Angeles. At about 3 a. m. that morning, according to the testimony of Mr. Rollins, defendant McCollin, with his hand under his coat, approached the witness at the service station, and pointing to Mr. Rollins' automobile, said "Isn't that tire flat?" The witness testified,

"Well, I told him he was drunk, and I didn't pay any attention to him and by that time he walked up to me and threw his arm around my waist and told me to come and go with him." At that time the witness observed that defendant McCollin had a nickel plated revolver in his hands. Defendant McCollin then escorted Rollins across the street to a distance of approximately 100 yards from the station; Rollins testified that he went with him "because of the gun." As McCollin and Rollins moved away from the station Rollins noticed the defendant Hornes, who had followed McCollin into the station by approximately five feet, proceeding toward the booth where the cash register was kept.

McCollin held Rollins momentarily, and, after searching his person, told him to "make the block." Rollins went to San Pedro Street and Florence Avenue and called the police. This was at about 3:15 a. m. He then hurried back to the station, called the "day man" who was to relieve him, and checked the cash register. Approximately $190 was missing. When Rollins had left the station with McCollin the cash register was closed; when he returned, it was open. He was the only one working at the station and had given no one permission to open the register.

A radio car of the Los Angeles Police Department responded to Rollins' call. Officer Funk first observed the defendants walking together about two and one-half blocks from the service station, at about 3:20 a. m. The defendants were taken to the service station, and Rollins was asked if he could identify them. When asked about Hornes, Rollins replied, "I am not sure. I don't want to have any trouble. I have a wife and three kids." As to McCollin, he said, "Yes, I think that's the man." Later the same day at the police station Rollins positively identified the defendants. He testified he had never worn eyeglasses or had a restricted driver's license, and no one had talked to him about identifying the appellants.

Although defendants were apprehended within 45 minutes after the alleged robbery, the amount of money taken by the robbers or the weapon used were not found in the possession of defendants or in their automobile. Defendant McCollin had no money on his person and defendant Hornes had $40 in his possession.

Sworn as witnesses in their own behalf defendants testified they were together on the night and early morning of their arrest. That defendant Hornes called for defendant McCollin

318

at the latter's home, 1182 East 41st Street, about 9:30 p. m. They proceeded in Hornes' automobile to Watts to call on a girl friend of defendant McCollin's but she was not at home. They then proceeded to a club on 103rd Street, from which place they departed about 2:15 a. m. That while enroute to McCollin's home, they decided to call on a girl friend of defendant Hornes' who lived on 71st Street. That Hornes ". . . didn't remember the address, but he knew the house, and he walked down there. We found a place to park and got up and walked back towards the house where she was supposed to live." That, "We got to the corner and he (Hornes) couldn't remember the address, so we went around the corner and that was supposed to be the house—it was near San Pedro —and we didn't see a house—and we started turning around the corner, and at that point they (the officers) stopped us." When the defendants saw the police automobile they separated for the reason, "we was on parole and we violated our parole if we was together." Defendant McCollin first told the officers he had been walking up from Watts and that he had left his wallet at his cousin's house—both untrue statements and which he explained he made because of his fear of being charged with a parole violation if he was found in the company of his codefendant. Both defendants were gainfully employed and working at the time of their arrest. They denied any complicity in the robbery of Mr. Rollins, or that they were in possession of any weapon.

As their first ground for reversal appellants contend that "there is no substantial evidence to connect appellants to the robbery." They assail the testimony of the victim as to identification of appellants, pointing out claimed inconsistencies and uncertainties therein, saying, "However, with the aid of suggestive questions and instructions by People's counsel, Rollins did identify Appellant McCollin as the 'short man' and Appellant Hornes as the 'tall man' at the Preliminary Hearing; and there was evidence at the Preliminary Hearing and at the trial that Rollins, after failing to recognize Appellants at the service station, went to the police station with his manager and there identified Appellants as the 'robbers' upon seeing them standing, alone, behind a glass door." Appellants assert that in the light of the foregoing, the testimony of Mr. Rollins standing alone is insufficient to identify them and lacks any corroboration. However, it is well settled that the testimony of a robbery victim if believed by the trier of facts, is sufficient of itself to war-

rant a conviction, and that no corroborative evidence is required (*People* v. *Thompson*, 147 Cal.App.2d 543, 546, 547 [305 P.2d 274]). ▮ Primarily, the identity of the accused as the perpetrator of a robbery is a question of fact for determination of the trial court. And appellants' argument that the testimony of the prosecuting witness was in some respects contradictory is not sufficient to warrant a reversal (*People* v. *Hightower*, 40 Cal.App.2d 102, 106 [104 P.2d 378]). ▮ Unless the evidence of identification can be strictured as inherently improbable or incredible as a matter of law, the finding of the trial court or jury cannot be disturbed and an appellate tribunal cannot substitute its judgment for that of the court below (*People* v. *McNeal*, 123 Cal. App.2d 222, 224 [266 P.2d 529]). ▮ In the case of *People* v. *Addington*, 43 Cal.App.2d 591, 593 [111 P.2d 356] wherein, at the preliminary examination, two identifying witnesses had testified that they were not absolutely positive in their identification, the reviewing court said: ". . . In order to sustain a conviction it is not necessary that the identification of the defendant as a perpetrator of the crime be made positively or in a manner free from inconsistencies. It is the function of the jury to pass upon the strength or weakness of the identification and the uncertainties of the witnesses in giving their testimony." ▮ Whatever may be said as to the weakness of the victim's identification at the scene of the crime following the arrest of appellants, the record reveals that Mr. Rollins positively and without hesitation identified appellants at the preliminary examination, and that he had previously, on the day the robbery occurred, positively identified them at the police station. Appellants claim that certain details of the victim's testimony at the preliminary hearing, and his testimony concerning the height and weight of appellants as compared with that of the robbers, were incorrect, does not warrant a reversal (*People* v. *Addington, supra*, p. 593).

▮ It is next contended by appellants that there is no substantial evidence that the crime of armed robbery of the first degree was committed by anyone. In this regard, appellants assert that ". . . there is no substantial evidence that $190 or any other property was taken from the immediate presence of Rollins by reason of the force used upon Rollins by the 'short man'; and that therefore Appellants conviction should be reversed irrespective of whether or not there was substantial evidence of their participation in the events

described by Rollins." This contention is without merit. ██ While it is true, as set forth by appellants, that to establish the crime of robbery a taking of personal property must be shown nevertheless, this element may be proved by circumstantial evidence (*People* v. *Appleton*, 120 Cal. 250, 251 [52 P. 582]; *People* v. *Lathrop*, 37 Cal.App.2d 341, 345 [99 P.2d 330]). ██ In the instant case, the victim was forced from the premises by a man he later identified as appellant McCollin. At the same time Rollins observed appellant Hornes proceeding toward the place where the cash was kept. When he was able to return to the service station Rollins found money was missing. The information alleged that $190 was taken. This estimate was arrived at on the basis of the station attendant Rollins' experience, both as to the usual intake on a Friday night, and on his observations as to the amount taken in on the night of the robbery. Since it is clear from the record that some money was taken as evidenced by the testimony of Rollins that when he returned to the station he found less than one dollar in change in the register, the amount of money taken becomes inconsequential because the offense charged may be proven by showing the taking of *any* money (*People* v. *Hewitt*, 78 Cal.App. 426, 429 [248 P. 1021]). The purpose of alleging a sufficient description of the property taken would seem to be to apprise the accused of the particular property he is charged with having taken, and thus enable him the better to defend against the charge. Since no attack was made upon the information as being insufficient to give appellants notice of the crime charged with regard to the amount taken, the information must here be deemed as sufficient to support a judgment. And, since some money was taken, the element of "taking of personal property" was clearly shown.

██ Appellants' claim that the property was not taken from the "immediate presence" of the victim is equally untenable. Although the station attendant was unable to view the actual taking, or sense it in any way, the court below was entitled to conclude from the evidence that appellants sought to facilitate their crime by removing the victim some 100 yards from the scene. When appellant McCollin compelled the victim Rollins to leave the station he thereby initiated the first of a chain of acts leading directly to the consummation of the robbery. That the victim was therefore, constructively present during the "taking" and that such "taking" was within his "immediate presence" is supported by the case of *People* v.

*Lavender*, 137 Cal.App. 582, 591 [31 P.2d 439], in which the accused and a companion forced a hotel clerk to remain in an upstairs room while they returned to the office to take the money there. The court undertook a lengthy review of the authorities, concluding that the taking was within the immediate presence of the clerk. The court said: ". . . At least as early as the time when the clerk was induced to leave the hotel office for the purpose of 'showing' the room to defendant and his companion the crime of robbery was commenced; it was an overt act connected with the commission of the offense, at which time the clerk was 'immediately' present. *The trick or device by which the physical presence of the clerk was detached from the property under his protection and control should not avail defendant in his claim that the property was not taken from the 'immediate presence' of the victim.*" (Emphasis added.)

The remaining elements of the crime, viz., fear and the felonious intent to rob, are amply supported by the evidence.

██ Finally, appellants urge that they were convicted "solely because they were on parole and associating with each other, a parole violation, near the time and place of an alleged robbery." An examination of the record fails to sustain appellants in this contention. While their counsel in his argument to the court made mention of appellants being on parole, and the deputy district attorney disclaimed any intention, ". . . to infer that they (appellants) were guilty just because they were violating their parole," at the conclusion of arguments by counsel, the court simply announced, "The defendants will be found guilty as charged." Furthermore, since the evidence was sufficient to sustain the adjudication of guilt, what appellants contend actuated the court in arriving at such conclusion, does not warrant a reversal.

The attempted appeal from the sentence by defendant McCollin is dismissed and the judgment as to him is affirmed. The judgment against, and the order denying motion for a new trial as to defendant Hornes are, and each is affirmed.

Lillie, J., concurred.

FOURT, J.—I concur. In this case each of the defendants was charged with a prior conviction of armed robbery. The certified copies of the former prison records were in proper order, and were received in evidence. Each defendant ad-

mitted to the prior charge and conviction on cross-examination. It is interesting to note that the defendants and appellants in this case committed the previous first degree armed robberies mentioned in the information as the priors, on August 25, 1954, in almost the identical fashion (robbing a service station around 4 a. m.—asking permission to use the restroom—each pulled a gun and forced the attendant to open the cash box, taking the money—taking the attendant away from the station to empty lot) as they committed the armed robbery with which we are concerned in this case. For the prior convictions, Hornes entered prison on February 28, 1955, and was released on parole August 28, 1957; McCollin entered prison on March 29, 1955, and was released on parole September 30, 1957. The two defendants, obviously, immediately got together after their release from prison and within less than 60 days were back at the business of armed robbery.

The court was fully informed of the background of each of the defendants, for the judge said at the time of sentence:

"THE COURT: Yes, I have also checked my notes, and the preliminary transcript shows that these gentlemen were convicted in 1954—Hornes in 1954 for robbery, and McCollin in 1955 for robbery. They served a term of imprisonment for those offenses, and it seems to me that they, more than anybody else, ought to know the seriousness of the conditions of their parole. Apparently they took it too lightly. I like to give a man a chance, but they just repeatedly become involved in offenses of this kind, and I don't see that there is anything we can do for them. I wish I had a pill I could give them to straighten them out, but I haven't."

The court then made no findings as to the prior convictions, as required by Penal Code, section 1158, and sentenced each of the defendants as a first offender. As said in *People* v. *Fields*, 167 Cal.App.2d 773 (filed February 10, 1959), at page 778 [334 P.2d 1001] : ". . . the defendant in this case is now, by reason of the judge's failure to find as to the prior convictions . . . permitted to serve a sentence which can be considerably less than that required and set forth in the statutes."