[Crim. No. 5720.   Second Dist., Div. Three.   Jan. 11, 1957.]

THE PEOPLE, Respondent, v. ASTON FELBON THOMPSON, Appellant.

Gladys Towles Root, Eugene V. McPherson and Joseph A. Armstrong for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

SHINN, P. J.—Aston Felbon Thompson was charged with two counts of robbery and one count of kidnapping. It was also alleged that at the time of the commission of the robberies defendant was armed with a .22 automatic. Trial was to a jury. The kidnapping count was dismissed on defendant's motion at the close of the People's case. Defendant was convicted of both robbery counts. The jury found that he was armed at the time of the commission of the crimes and found the offenses to be robbery of the first degree. Defendant's motion for a new trial was denied. Application for probation was also denied and Thompson was sentenced to state prison for the term prescribed by law, the sentences on each count to run concurrently. Defendant appeals from the judgment and the order denying him a new trial.

Defendant contends that the evidence was insufficient to support the verdicts of guilty, that the court erred in refusing to give an instruction requested by him, and that the district attorney was guilty of prejudicial misconduct during his closing argument to the jury.

There was evidence of the following facts. On December 18, 1955, Richard L. Mansfield was working at a gas station located at 2050 North Fair Oaks in Pasadena. At about 9

p. m., he closed the station and entered his car which was parked behind the station. He started the motor and turned on the headlights. Through the beam of the headlights he saw a clean-shaven Negro, wearing a dark dress coat and an unmatching pair of dark dress slacks approaching him. The man also wore a handkerchief around his neck. Mansfield identified him as defendant. When the man learned that Mansfield was in charge of the station he displayed a .22 automatic and ordered him out of the car. Mansfield did not know whether the automatic was loaded but stated that he was afraid of the gun. Defendant asked Mansfield for the bag of money. On being told that there was no bag of money, the man took Mansfield's wallet which contained $10 and his car keys and left the premises. About two weeks after the robbery Mansfield attended a police show-up and identified defendant as the man who had robbed him. At that time defendant was asked to say "Give me the bag" and Mansfield identified defendant's voice as that of the robber.

On December 24, 1955, Joseph Friedman was operating a general merchandise store at 353 North Fair Oaks in Pasadena. He lived with his family in a house at the rear of the store. At about 8 p. m., Friedman closed down the store. As he was turning the corner to go into his house, a Negro wearing a dark dress coat and dark dress slacks ran up to him. The man had a slight moustache which Friedman stated was similar to defendant's. The man poked a dark automatic into Friedman's chest and said: "It is a hold up. Give me the money." Friedman identified the robber as defendant. He took $20 from Friedman's pocket and ordered him inside the house to get more money. As they entered the house the man put a handkerchief or a T-shirt over his face and said: "Tell your wife to give me the money; if not, I will kill you." Friedman was afraid of the gun and told his wife to do as asked. When told that there was no more money, the man threatened to shoot the Friedmans and then left. Friedman testified that he identified defendant as the culprit at a police show-up a week after the robbery. Mrs. Friedman likewise testified for the People but she was unable to identify defendant as the robber.

Defendant, testifying in his own behalf, stated that he lived in Pasadena and that he had gone to the Friedman store about a week before the robbery to find some trousers to match a suit. He stated that he did not own a gun and denied

committing either of the robberies. He had worn a moustache since 1947 and was wearing one on the night of both robberies. On December 18th he went to Pomona in the company of a Mrs. Carson and her daughter to visit a friend of his named John Tilton Smith. They arrived at Smith's residence at about 7 p. m., remained there for half an hour, and the party then went to Smith's studio where they listened to jazz records and talked until 10 p. m. Smith, testifying in defendant's behalf, corroborated Thompson's account of his whereabouts on the evening of December 18th.

Defendant testified that on December 24th, he visited a Mrs. Florence Morrow and her son at her apartment in Los Angeles while her husband was out of town. He arrived at about 6 p. m., and they spent the evening decorating a Christmas tree, watching television and talking. He stayed overnight in the Morrow apartment. On cross-examination, defendant admitted a prior felony conviction. Mrs. Morrow, testifying in defendant's behalf, corroborated his account of his whereabouts on Christmas Eve.

The first assignment of error to be considered is the insufficiency of the evidence to support the verdicts of the jury. In this connection defendant urges that the evidence of his alibi for the evenings of December 18th and 24th was unimpeached and uncontradicted and that the descriptions of the robber given by the two victims were inconsistent, namely, that Mansfield testified that the culprit was clean-shaven, while Friedman testified that he had a moustache. Thus defendant argues that "in this case it is incredible that the same man could have committed both robberies." The argument is without merit.

Viewing the evidence, as we must, in the light most favorable to the prosecution, there was ample evidence to support the jury's determination that both robberies were perpetrated by the same person and that that person was defendant. The robberies occurred within a mile or so of each other. The *modus operandi* of the criminal was the same, namely, to approach a place of business at closing time in the hope of taking the day's receipts. Both victims testified that the robber was wearing a dark dress coat, dark dress slacks, and had a handkerchief around his neck. Mansfield and Friedman stated positively that defendant was the robber.

An identification of an accused by the victim of a robbery is sufficient to sustain an implied finding that he committed the crime. (*People* v. *Hernandez*, 47 Cal.App.2d

132 [117 P.2d 394] ; *People* v. *Beltowski,* 71 Cal.App.2d 18 [162 P.2d 59] ; *People* v. *Calloway,* 127 Cal.App.2d 504 [274 P.2d 497].) ■ The identification need not be corroborated by other evidence. (*People* v. *McNeal,* 123 Cal.App.2d 222 [266 P.2d 529].) ■ Whether the discrepancy between the testimony of Mansfield and Friedman as to the robber's moustache raised a reasonable doubt of his identity or rendered their testimony unworthy of belief was a question for the jury to decide. (*People* v. *Miller,* 134 Cal.App.2d 792 [286 P.2d 415].) ■ Although the testimony of defendant and his witnesses, if believed, would have established an alibi for defendant, it merely created a conflict in the evidence and the credibility of that testimony was a matter for the jury to decide. (*People* v. *Spillard,* 15 Cal.App.2d 649 [59 P.2d 887].)

■ The next assignment of error to be considered is that the court erred in refusing to give the following instruction at defendant's request: ''If the evidence in this case (as to any particular count) is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt. You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.'' Defendant argues that since the evidence which tended to establish his guilt was circumstantial, he was entitled to an instruction defining the jury's duties in weighing the reasonable inferences to be drawn from that evidence, citing *People* v. *Merkouris,* 46 Cal. 2d 540, 560-562 [297 P.2d 999]. But defendant misconceives the nature of the testimony at the trial. ■ The evidence offered by the People consisted of the identification of defendant and that offered by Thompson consisted of testimony that he could not have been at the scene of the robberies at the times in question. Such evidence is direct, not circumstantial. (Code Civ. Proc., § 1831.) ■ The instruction requested

by defendant is proper only when the prosecution relies either wholly or substantially upon circumstantial evidence. (*People v. Monge*, 109 Cal.App.2d 141, 144 [240 P.2d 432], and cases cited.) In *People* v. *Merkouris, supra*, 46 Cal.2d 540, two witnesses testified that they saw the accused either leaving or in the vicinity of a ceramics shop in Los Angeles at the approximate time of a murder committed in the shop. Defendant's evidence was that he was out of the city at the date of the murder. The court stated (p. 562) that the jury could have disbelieved the identification testimony, but that if this testimony were believed, it would be no more than circumstantial evidence of Merkouris' guilt and that it was error to refuse to instruct the jury as to the "two reasonable theories" doctrine. In the instant case the jury had only to determine whether the testimony of the identifying witnesses or that of defendant and his witness should be believed. It was not error to refuse the requested instruction.

The final assignment of error is that the district attorney was guilty of prejudicial misconduct during his closing argument to the jury. We have set out the statements complained of in the margin.[1] The remarks were intemperate. Especially ill-advised was the rejoinder of the deputy district attorney after the court had stricken some of his argument and admonished the jury to disregard it. It was also improper to argue that defendant's admission on cross-examination, which went only to the question of his credibility, was a fact to be considered as tending to prove guilt. The court gave the jury a formal instruction to disregard any statements

---

[1]"'He wants us to be fair. Did you ever hear of a robber being fair? This is a criminal trial. We are here to ascertain the truth. The truth is that this man is guilty as the day is long. I don't care what you do with him. It is your community If you want people like this in it, why, remember that he is going to do big time——

"Mr. Hollopeter: All right, I assign the making of that remark as misconduct, and ask the Court to instruct the jury to disregard the remark about men like that in the community, as being inflammatory and prejudicial.

"The Court: That portion of the remark may go out, and the jury is admonished to disregard it.

"Mr. Howard: If I say anything that is inflammatory, it is because I mean it.

"Mr. Hollopeter: I will assign the making of that remark as being misconduct.

"Mr. Howard: I mean that this defendant is guilty. Mr. Hollopeter says he is not. He didn't make any admissions so therefore he is not guilty. Well, he has very begrudgingly admitted that he was convicted of a felony on this stand. He didn't want to admit it in this Court, when it happened right in this very Court. That is the type of individual you are working with here.''

made by counsel concerning the facts of the case and not to regard them as evidence unless they amounted to a stipulation. There was no misconduct that would require a reversal.

Judgment and order affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 5, 1957.