[Crim. No. 6351.   Second Dist., Div. One.   Jan. 2, 1959.]

THE PEOPLE, Respondent, v. JACK EUGENE BISHOP, Appellant.

Taylor, Sherman & Heller and Charles B. Taylor for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted by the court of first degree robbery of a gasoline station. At the time of sentence, the trial judge found the weapon used to be a dangerous one and sentenced defendant to the state prison.

The sole issue on this appeal is whether the testimony of the victim is so inherently unbelievable or improbable as to render it insufficient to sustain the judgment of conviction.

According to the testimony of Harold Ray, an employee of the gasoline station and the complaining witness, the following events occurred during about five minutes, at approximately 8:45 p. m. on July 19, 1957. Ray was in the process of closing the station, which was still lighted, but was under his car fixing the stop lights when he heard someone say: "May I have the key to unlock the restroom?" Ray asked him if his lights were working and the person replied: "Yes, they

are sir.'' He emerged from under the car and as he reached the restroom, the one with whom he had been speaking placed a gun in his back and said: ''All right, let's go inside.'' The washroom, about 4 feet square, was also lighted. Ray went in, turned around and faced a person wearing a brown suede jacket, dark pants and no hat or glasses, holding a blue steel automatic pistol 6 or 7 inches long. He said: ''We are going to go out front and we'll get the money out of the cash drawer. I don't want you to make any unusual disturbance or anything like that.'' In all, they remained in the washroom 30 to 45 seconds, then walked out and over to the island where the cash box was kept. More conversation took place between them and they returned to the restroom, where Ray gave him the money. There was further discussion concerning the cash, after which he took Ray's wallet saying: ''Don't worry, I am not going to hit you.'' As he left the washroom he closed the door and dropped the keys outside. Ray testified he was in fear during the time he turned over the money and that $109.07 was taken.

After the robbery, Harold Ray was shown a ''mug'' book by police but made no identification; later he was shown a set of pictures from which he identified defendant as the robber; seven days after the robbery he picked defendant out of a police lineup as the one who took the money; again pointed out defendant in court at the preliminary hearing and during the trial definitely identified defendant as the person who robbed him, saying: ''There is no doubt in my mind.''

Ray further testified he noticed nothing unusual about the voice, speech, walk or condition of the eyes of the man who took the money. Defendant was arrested approximately five days after the robbery and although his car was searched, no revolver or brown suede jacket were found. Police did not search his home.

Defendant denied commission of the robbery both to police and at the trial. Officer Reeves testified for the prosecution that when he first talked to defendant, he told him that on the day of the robbery he drank beer in the Passtime Bar from 3:30 p. m. to 7 p. m., at which time he went across the street to a café for several cups of coffee, where a waitress told him to leave because of his drunken condition; that at approximately 8 p. m. he returned to the bar and did not leave until 1 a. m. The distance between the bar and the gasoline station is approximately 2½ miles. The officer further testified that he checked his story and later told defendant he was unable

to substantiate the time element; that defendant then told him that when he left the café it was possible he had driven his car around for awhile, but in any event people should remember him at the bar and café because of his drunken condition.

At the trial, defendant testified to substantially the same story he told Officer Reeves, but added that he left the bar to go to the café between 7:30 and 8 p. m.; that after leaving there he went to sleep in his car and that he wore a "T" shirt, work boots and denims. He further testified that he did not in his prior conversation tell police he fell asleep in his car, but instead told them he was at the bar because he "thought" that was where he had been; that he did not actually sleep in the car but only "dozed"; that he went across the street and talked to his boss, returned to the café and went home; and that he did not own a brown suede jacket or revolver.

The bartender at the Passtime Bar testified defendant was in the bar when he went on duty at 6 p. m. and that he left around 8 p. m. to go across the street to a café, from which he returned at 10:30 in a drunken condition. The waitress at the café testified he entered at about 8 p. m., was drunk, and she refused to serve him beer; that after a slight commotion, he sat in a booth and drank three cups of coffee and was drunk when he left around 8:30.

Appellant argues that to sustain the judgment all testimony other than that of Harold Ray must be disregarded because it is inherently improbable. He further points out that as to Harold Ray there was "no examination with reference to the physical characteristics of the person who robbed him."

The evidence shows, on the one hand, the actual commission of a crime of robbery—use of a dangerous weapon (*People* v. *Rainey*, 125 Cal.App.2d 739 [271 P.2d 144]) and the felonious taking of personal property from the person of another by means of force or fear (*People* v. *Cleary*, 1 Cal.App. 50 [81 P. 753]; Pen. Code, § 211); and the positive identification of the defendant as the one who commited it; and on the other hand, testimony which, if believed, would constitute an alibi. On the record before us, unless the testimony of Harold Ray is inherently improbable, there exists merely a factual conflict which was resolved by the trier of fact; and on appeal the trial court's determination therefor will not be disturbed. ■ It is well settled that where, as in the case at bar, there is positive direct testimony that defendant committed the offense, defendant has the burden of showing that such testimony is inherently unbelievable in order to justify a reversal on that

ground. (*People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402] ; *People* v. *Castro,* 68 Cal.App.2d 491 [157 P.2d 25].)

As to the inherent improbability of testimony generally, the court in *People* v. *Lyons,* 47 Cal.2d 311, stated at pages 319-320 [303 P.2d 329] : ''The rule is thus stated in *People* v. *Huston* (1943), 21 Cal.2d 690, 693 [134 P.2d 758] : 'Although an appellate court will not uphold judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. (*Kidroski* v. *Anderson* (1940), 38 Cal. App.2d 602, 605 [103 P.2d 1000].)' To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.)''

In the instant case we find not only no unusual circumstances concerning Ray's testimony of the robbery and identity of the person who took his money, but nothing which would even subject it to justifiable suspicion. Actual events of the robbery lasted approximately five minutes. The witness had ample opportunity to observe him. The service station was lighted; he was within close proximity to the person who robbed him while walking and talking with him, particularly in the small lighted washroom where Ray was confronted with him face to face for about 45 seconds, and where later he turned the money over to him. He saw that the man wore no hat or glasses and that he had on a brown suede jacket with knit sleeves and collar and dark pants. The witness walked with him three times the distance between the station and the washroom, and saw him walk and stand and heard him speak on five or six occasions. He later identified defendant as the man who robbed him, from a set of photos, out of a police lineup, at the preliminary hearing and at the trial. We find nothing apparently false or physically impossible about Ray's testimony or his identification of the defendant.

The fact that Harold Ray was not examined concerning the physical characteristics of the person who robbed him is of no import under the circumstances at bar. Since he was able to positively identifiy defendant, there was no reason why the prosecutor should or would have further questioned him concerning his physical appearance. However, defendant's counsel had every opportunity to do so on cross-examination but chose not to, taking a chance that the trial judge would not accept Ray's testimony as it then existed. Having

gambled and lost, he is not now in a position to raise the matter on appeal. No restriction was placed on defendant's cross-examination of the complaining witness and no objection of any kind was interposed in the trial court.

Having found Harold Ray's testimony to be reasonable and believable, we conclude it sufficient to sustain the judgment. ▇ A conviction for robbery may be sustained on appeal where the identity of the accused is based on the testimony of a single witness. Concerning this, the court in *People* v. *Thompson*, 147 Cal.App.2d 543, stated at pages 546-547 [305 P.2d 274]: "An identification of an accused by the victim of a robbery is sufficient to sustain an implied finding that he committed the crime. (Citations.) The identification need not be corroborated by other evidence. (*People* v. *McNeal*, 123 Cal.App.2d 222 [266 P.2d 529]."

In opposition to the testimony of the complaining witness that he noticed nothing unusual about the speech, carriage or physical condition of the man who robbed him, defendant offered evidence to the effect he was drunk at the time of the robbery, approximately 2½ miles away, which if believed would have established an alibi. At most, it presented a conflict in the evidence. ▇ The determination of the credibility of the witnesses, the truth or falsity of the facts upon which a decision depends, and the weight of the evidence is within the exclusive province of the trial judge and it is he who has the duty to resolve the factual conflict. (*People* v. *Thompson*, 147 Cal.App.2d 543 [305 P.2d 274]; *People* v. *Spillard*, 15 Cal.App.2d 649 [59 P.2d 887]). The trial court accepted the testimony of Harold Ray as worthy of belief and found accordingly. It obviously rejected the alibi testimony of defendant and his witnesses. Viewing the evidence in the light most favorable to the prosecution, the evidence is more than ample to sustain the conviction.

▇ Affirmance of the judgment carries with it affirmance of the sentence. (*People* v. *Perkins*, 147 Cal.App.2d 793 [305 P.2d 932]; *People* v. *Cochran*, 162 Cal.App.2d 733 [328 P.2d 532].)

For the foregoing reasons, the attempted appeal from the sentence is dismissed. The judgment is affirmed.

White, P. J., and Fourt, J., concurred.