[Crim. No. 7451.    Second Dist., Div. Two.    July 17, 1961.]

THE PEOPLE, Respondent, v. ROBERT GUSTAVE
WYBACK, Appellant.

Robert Gustave Wyback, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and C. Michael Gianola, Deputy Attorneys General, for Respondent.

McMURRAY, J. pro tem.*—A jury having found defendant guilty of a felony, violation of section 211 of the Penal Code, a robbery by means of force and fear on the person of one Nagel, and defendant having admitted five prior felony convictions, he was adjudged to be a habitual criminal at the time sentence was pronounced. Defendant appeals from the judgment.

On January 19, 1960, Nagel was employed as a clerk in a

---

*Assigned by Chairman of Judicial Council.

liquor store when shortly before 8 p. m. a gray-haired man entered the brightly lighted store. The man was dressed in brown pants and a lumberjack jacket over a shirt. He kept furtively looking around and acted nervous. Nagel looked at the man more carefully than he would usually look at a customer because of this behavior. His observation led him to believe that the man was 48 or 50 years old and weighed about 180 or 190 pounds. The man had several little holes in his face and small, slanted eyes.

The man approached the counter where he was not more than 5 feet away from Nagel and requested a bottle of Vodka. Upon being asked what kind of Vodka, he replied: "Any kind." Nagel removed a bottle of Vodka from the shelf next to where he was standing and set the bottle on the counter. The man hollered: "Put it in a sack." Nagel did so and said: "$4.32, please." The man who now appeared very nervous opened his coat and showed Nagel a long white-handled gun protruding from the waistband of his trousers and said: "This is a hold up." Nagel said: "Help yourself" and began to move toward the end of the counter. The robber helped himself to $133 from the open cash register, left the store and instructed Nagel not to follow him. At this time Nagel noticed that the robber's teeth were black and broken. Nagel went outside and saw the robber run across the street and proceed easterly. Thereafter, he reported the robbery to the police. At about the same time, and near the place where the robbery took place, a witness noticed a green Oldsmobile convertible parked by the driveway in front of the house next door from which a man left, walked toward the direction of the liquor store and later returned to the car.

About a month later a police officer showed eight or ten photographs of different Caucasian persons to Nagel, who, without any hesitation, picked out and identified the appellant's picture as that of the robber. Thereafter, the same police officer talked to the appellant at the police station. Appellant admitted that he had been in Los Angeles County during the month of January 1960 but was vague as to dates. He stated that about the 9th or 10th of January 1960 he had been to the Department of Employment in Los Angeles where he met two men known to him only as Phil and Ed. Although these two men had a 1955 green four-door Oldsmobile, appellant did not know whether it had out-of-state license plates; the witness who noted the convertible Oldsmobile stated it had such plates.

Appellant was placed in a police lineup with four other Caucasian men. He was the only one dressed in a brown suit, as the others were attired in khaki overalls. Nagel immediately positively, and without any doubt whatsoever, picked out and identified the appellant as the robber. Nagel also identified the appellant as the robber at the preliminary hearing, and at the trial. The appellant's hair was the same color and texture and was combed in the same manner as that of the robber. Appellant also had the same sort of small, slanted eyes, and approximated the weight, height and age description of the robber. Although appellant apparently did not have the several little holes in his face, and his teeth were not black and broken, as the robber was originally described by Nagel, it was brought out that such marks and discolorations could have been simulated through the use of makeup and disguise.

The appellant appears to contend that the judgment is unsupported by the evidence in that the victim's identification of the robber is inherently improbable and that the evidence is insufficient to show that appellant was armed with a dangerous or deadly weapon; and, second, that the deputy district attorney was guilty of prejudicial misconduct in misstating a fact to the court and making certain remarks in his argument before the jury.

The allegations of insufficiency of the evidence and the unsatisfactory character of identification of appellant by the victim are without merit. There is ample evidence to support appellant's conviction and the inconsistencies in the witness' testimony are not such as to show any inherent improbability, but rather are of a sort which is completely consistent with veracity. The evidence supports a finding of the actual commission of the crime of robbery, the use of a dangerous weapon, and a felonious taking of the personal property from the person or immediate presence of another by means of force or fear. (*People* v. *Bishop*, 166 Cal.App.2d 687, 690 [333 P.2d 352]; Pen. Code, § 211.) The witness positively identified appellant as the perpetrator of this crime. The inconsistencies between his initial description and the appellant's later appearances were facts for the jury to weigh. (*People* v. *Mack*, 171 Cal.App.2d 631, 632 [341 P.2d 334].)

A conviction for robbery may be proper where the identity of the accused is based on the testimony of but one witness. (*People* v. *Hornes,* 168 Cal.App.2d 314, 318-319 [335 P.2d

756]; *People* v. *Bishop, supra,* 166 Cal.App.2d 687, 692; *People* v. *Thompson,* 147 Cal.App.2d 543, 546-547 [305 P.2d 274].) This identification need not be corroborated by other evidence. (*People* v. *Reed,* 175 Cal.App.2d 402, 406 [346 P.2d 513]; *People* v. *Bishop, supra,* 166 Cal.App.2d 687, 692.)

Furthermore, appellant did not take the stand to deny or explain any of the testimony against him, nor did he call any witness to testify in his behalf. Whether or not appellant had committed the crime with which he was charged was a matter which was peculiarly within his own knowledge. Therefore, his failure to testify and deny these incriminating circumstances may have weighed heavily against him. As the court said, in *People* v. *Gillette,* 171 Cal.App.2d 497, 502 [341 P.2d 398] : ''While the 'failure to testify will not supply a lacuna in the prosecution's proof' (*People* v. *Ashley,* 42 Cal.2d 246, 268 [267 P.2d 271], '[a] defendant's failure to take the stand ''to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.'' (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3]'; [citations].) As pointed out in the *Adamson* case, *supra,* '[t]he failure of the accused to testify becomes significant because of the presence of evidence that he might ''explain or . . . deny by his testimony'' (Cal. Const., art. I, § 13), for it may be inferred that if he had an explanation he would have given it. . . .' (*People* v. *Chapman,* 156 Cal.App.2d 151, 157 [317 P.2d 8].)''

The appellant urges this court to reverse the judgment because of alleged prejudicial misconduct on the part of the prosecuting attorney in misstating a fact to the court. The incident complained of occurred out of hearing of the jury and was made by the prosecutor in seeking to have a certain statement made to an officer admitted into evidence. The whole statement was not admitted and the matter complained of was only in the nature of the prosecutor's interpretation of one aspect of the statement which was properly admissible. Appellant also contends that in his closing argument to the jury the deputy district attorney committed prejudicial error by misstating that the victim had seen ''marks on the defendant's neck,'' whereas there was no evidence to support such statement in the entire record. This

statement could not have prejudiced defendant as it could easily have been a slip of the tongue and in any event the jury had heard the entire case and could not have been misled thereby. ██ Appellant also contends that by referring to him as a "professional" the prosecutor prejudiced his rights, pointing out, correctly, that there was nothing before the jury to show that appellant had ever been involved in any other criminal activity. While it is true that such references might better be avoided, nevertheless, in order to constitute reversible error it must appear that the statement was of such nature as to amount to prejudicial misconduct. In view of all the evidence here, we cannot hold such a single, isolated reference to be so prejudicial as to require reversal, where there is no apparent miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The appellant, appearing in propria persona, has given vent to certain remarks which find no support in the record. The purport of such remarks seems to be that the appellant was convicted upon a trumped-up case, but this finds no basis in the record. In the "Appellant's Closing Brief" appellant complains of certain defects in the proceeding adjudging him to be a habitual criminal.

██ In this respect he contends that the court did not proceed in accordance with the provisions of section 644 of the Penal Code, dealing with persons to be adjudged habitual criminals, since such adjudication was not made until after he had been sentenced for the robbery and that therefore the adjudication that the appellant was a habitual criminal was mere surplusage. This is an artful but not persuasive argument. The record shows that of the five prior felony convictions charged in the information and admitted by appellant, and for each of which he admitted having served a term of imprisonment in a state prison, two of such convictions were for burglary and one was for robbery. These counts bring appellant within the terms of Penal Code, section 644, and the court's finding that he is a habitual criminal was proper and properly pronounced.

The judgment is affrmed.

Fox, P. J., and Ashburn, J., concurred.