[Crim No. 8554.   Second Dist., Div. Three.   June 26, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILL OTIS SANDERS, Defendant and Appellant.

Carl A. Earles for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—By an amended information the defendant Sanders and Jack O'Neal Hackett were charged with the crime of robbery. (Pen. Code, § 211.) It was alleged that money was taken from Henry F. Zander, who was "a person who was then and there performing his duties as operator of a motor vehicle used for the transportation of persons for hire."[1] It was further alleged that at the time of the com-

---

[1]Section 211a of the Penal Code is as follows: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or

mission of the offense, the defendants "were armed with a deadly weapon, to wit, switch-blade knife." Each defendant waived his right to trial by jury. The defendant Sanders was convicted of robbery of the first degree. Hackett was acquitted. While the document which has been assumed to be a notice of appeal from the judgment was not skillfully drawn,[2] no question as to its sufficiency has been raised by the respondent. We treat it as constituting a sufficient compliance with the law. (See *People* v. *Robinson*, 43 Cal.2d 143, 145 [271 P.2d 872].)

The principal contention of the defendant Sanders is that the evidence as to his identity as one of the participants in the commission of the crime was insufficient to sustain the conviction. The witness Zander testified that he was a cab driver and that about ten minutes before 6 o'clock on the morning of February 15, 1962, two men entered his cab as passengers and directed him to take them to another part of the City of Compton. He did so. After he alighted from his cab and went around the vehicle and opened the rear door, Sanders placed a knife against his stomach. The exposed blade was about 4 inches long. Upon the demand of Sanders, the cab driver gave him his change. Sanders' companion took the cab driver's wallet from his pocket. The wallet contained about $15.

Portions of the cab driver Zander's testimony under cross-examination were as follows: "Q. Were you too scared, sir, to pay much attention to anything? A. Well, I was pretty scared all right. . . . Q. Were you too scared to pay too much attention to anything? A. Yes. Q. Now, in answer to one of the questions which the District Attorney asked you . . . you referred to the Defendant, Sanders. Did you say, in referring to something he said, 'It might not be him but it looked like him?' Was that one of your answers to the District Attorney's question? A. I believe it was, yes." The witness could not recall whether the robber that he testified was Sanders had a mustache at the time of the offense.

On redirect examination the cab driver testified in part as

deadly weapon, and the robbery of any person who is performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire, is robbery in the first degree. All other kinds of robbery are of the second degree.'" (See *People* v. *Cabral*, 198 Cal.App.2d 387, 390-391 [17 Cal.Rptr. 896].)

[2]The document appears to have been prepared by the defendant and not by an attorney.

follows: "Q. . . . Is there any doubt in your mind that the shorter of the two men who held you up on the 15th is the Defendant, Sanders? A. Not to my — not to my mind, no. Q. There is no doubt? A. No, no doubt in my mind." He did express a doubt as to whether the defendant Hackett was the man who participated with the defendant Sanders in the commission of the offense.[3] The witness further said that he could not tell whether the knife used "was a switch-blade, paring knife, or anything."

On inquiry by the court, the cab driver testified as follows: "Q. By THE COURT: Do I understand that you have no doubt that Sanders, sitting at the end of the counsel table, is the shorter of the two men you have described? A. Yes. Q. You have no doubt? A. I have no doubt — well, it's to my, to my recollection, and from what I seen, I would say that he is."

On recross examination, the cab driver Zander gave the following testimony: "Q. Well, you told us a little earlier, sir, that this might not be Sanders, but it looked like him; is that right? A. Yeah — well, that's what I meant to say; it looks so much like him that I couldn't —— Q. Did the man whom you have identified as being Mr. Sanders have any conversation with you in the cab from the point of the pick-up until the point to where you came to? A. Yes; just talked a little bit about the weather, how bad the weather was. Q. Now, did that person talk to you, or did he talk to his companion? A. He was talking to me." In response to further inquiry, the witness stated that at the preliminary hearing he had testified as follows: "Q. You say there was no conversation with either person the entire time you were in the cab and you were driving to the location; is that right? A. No. Q. Did you hear any conversation between them? A. No."

The defendant Sanders testified in his own behalf. He denied that he had committed the offense charged and said that he was at home in bed at the time when the robbery occurred. He further testified that he had had a mustache for "over two years." The defendant's alibi was supported by testimony of his mother, his brother and his sister.

The appeal is without merit. ▮ The governing law is stated as follows in *People* v. *Alonzo,* 158 Cal.App.2d 45 [322 P.2d 42], at page 47: "The rule is firmly established that

---

[3]On the basis of that doubt, the trial court determined that the evidence was not sufficient to warrant the conviction of Hackett.

before a judgment can be set aside on the ground of the insufficiency of the evidence it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. We must assume in support of the judgment the existence of every fact which the arbiter of the facts could reasonably deduce from the evidence. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Frankfort*, 114 Cal.App.2d 680, 689 [251 P.2d 401].) It is the province of the trier of the facts to pass upon the credibility of the witnesses and determine the weight that should be given to their testimony; also, to resolve any conflicts and inconsistencies in their testimony, and this rule applies to conflicts and inconsistencies in the testimony of a particular witness.''

The record does not disclose any substantial basis for the attack made in this court upon the accuracy of the cab driver's identification of the defendant Sanders. As stated in *People* v. *Hornes*, 168 Cal.App.2d 314 [335 P.2d 756], at pages 318-319: ''However, it is well settled that the testimony of a robbery victim if believed by the trier of facts, is sufficient of itself to warrant a conviction, and that no corroborative evidence is required (*People* v. *Thompson*, 147 Cal.App.2d 543, 546, 547 [305 P.2d 274]). Primarily, the identity of the accused as the perpetrator of a robbery is a question of fact for determination of the trial court. And appellants' argument that the testimony of the prosecuting witness was in some respects contradictory is not sufficient to warrant a reversal (*People* v. *Hightower*, 40 Cal. App.2d 102, 106 [104 P.2d 378]). Unless the evidence of identification can be strictured as inherently improbable or incredible as a matter of law, the finding of the trial court or jury cannot be disturbed and an appellate tribunal cannot substitute its judgment for that of the court below (*People* v. *McNeal*, 123 Cal.App.2d 222, 224 [266 P.2d 529]).'' (See also *People* v. *McLaine*, 204 Cal.App.2d 96, 103-104 [22 Cal. Rptr. 72]; *People* v. *Thompson*, 147 Cal.App.2d 543, 546-547 [305 P.2d 274].)

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.