354

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM STANLEY HOLZHAUER, Defendant and Appellant.

Michael Cullen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from an order denying a motion for a new trial. The respondent has made a motion to dismiss the appeal upon the ground that it presents no meritorious question.

In an information filed in Los Angeles County on July 12, 1962, defendant was charged with a violation of section 220, Penal Code (an assault upon a named female, under the age of 18 years, with the intent to have an act of sexual intercourse with said female by means of force or fear). It was further charged that the defendant previously had been convicted of a felony in California. Defendant pleaded not guilty and before the time of the trial admitted the charged prior conviction. The jury returned a verdict of guilty as charged in the information. A motion for a new trial was denied. Two psychiatrists were appointed by the court under the provisions of section 5504, Welfare and Institutions Code. The first of the doctors reported that ''this prisoner belongs in the category of a sexual psychopath and is a menace to the health and safety of others.'' The second of the doctors reported that ''the examiner believes that the defendant's actions, his degradation from a long constant drinking habit, have built up a pattern of psychosexual neurosis that makes him a menace to the health and safety of others and a sexual psychopath as defined in section 5500 of the Welfare and Institutions Code.''

Defendant was declared to be a ''probable sexual psychopath,'' criminal proceedings were adjourned and he was committed for a period of not to exceed 90 days to the state hospital at Atascadero for observation and diagnosis.

A résumé of some of the facts is as follows: Shortly before midnight of June 17, 1962, the victim herein was standing on the sidewalk close by her home in Van Nuys waiting for her boy friend. The defendant who had lived in the immediate area for several years drove up in an automobile. The victim, mistakingly thinking for a moment that the defendant was her boy friend, walked up to the car and upon discovering her mistake turned back. The defendant got out of the automobile and started to talk with the victim. She indicated that she was going down the street to a telephone booth to make a telephone call to her boy friend and the defendant asked if he could walk with her. They walked some little distance without locating a telephone and they then returned to the street where defendant and the victim resided. She saw her boy friend in front of her house in an

automobile. She ran toward the car in which her boy friend was riding but he did not see her and drove away before she got to the car. The victim and the defendant then walked to a telephone booth on Van Nuys Boulevard where she talked on the telephone to her boy friend and arranged to meet him in front of her house in three minutes.

While walking back to the neighborhood in which the victim and the defendant lived, the defendant put his arm around the victim and asked her for a kiss. She refused and he thereupon pushed her over into some bushes nearby. He held her down on the ground and she started to scream and the defendant put his hand over her mouth to stop her. Defendant told her of what he had ''the previous time''—he showed her a white pill and told her that the pill was ''the reason the doctor—he hadn't slept for about the last four nights.'' He further stated that ''he was once up for trial before this, for rape, and he got out of it.'' The defendant requested that she engage in an act of sex perversion. She was frightened and was told to take off her capris. He got the capris down to her knees. She, thinking of a way to get away, said, ''I'll take off my own capris from the knees down.'' She then took off the capris and jumped up and started running towards her home. She screamed and the defendant chased her calling out ''you will never get away, I'll catch you.''

A neighbor heard the screams of the victim and the victim ran through the open front door of the neighbor's house dressed only in a blouse, sweater and underpants. She was frightened, shaking, crying and fell to the floor.

The defendant testified in his own behalf and in referring to the area in question spoke of it as the ''scene of this deal.'' Upon questioning by his counsel as to what he meant by the word ''deal'' defendant responded ''I meant where the scene of the crime was committed.'' He admitted to kissing the victim and starting to take off her capris.

 Appellant now asserts that there was misconduct by the deputy district attorney during the direct examination of the victim with reference to the matter of a white pill which appellant had shown to the victim. The court admitted the evidence of defendant's statement about the white pill solely to show the state of mind of the victim. In argument the deputy district attorney referred to the episode and indicated that the defendant was on stimulants. There was an objection by counsel for the defendant upon the ground that

it was an attempt "to associate the defendant with the use of narcotics or stimulants." The court sustained the objection. The prosecutor then indicated in accordance with the ruling that the evidence of the pill was received for the limited purpose of showing the state of mind of the victim.

Further it is asserted that in the closing argument the prosecutor referred to the testimony of an officer to the effect that the officer smelled no alcohol on the breath of the defendant but that "he was under the influence of something." No objection was made to the statement at the time.

It is also obliquely contended that the public defender did an inadequate job in representing the defendant at the trial.

A complete reading of the entire record in this case leads to the conclusion that if the testimony of the victim and the other witnesses of the prosecution is believed (and the jury obviously resolved the conflict in the testimony in favor of the prosecution), then and in such event the evidence is clear that the defendant received a fair trial and was properly convicted.

The statements of the deputy district attorney which are complained of now were insignificant in the overall reach of this case. The jury could not possibly have been led to determine the case upon the basis of any complained of remarks. All of the testimony was fresh in the minds of the jurors and any erroneous statement made by the prosecutor did not mislead the jury. See *People* v. *Wyback*, 193 Cal. App.2d 754, 758 [14 Cal.Rptr. 501]; *People* v. *Cheary*, 48 Cal.2d 301, 317 [309 P.2d 431].

A reading of the record discloses that the public defender did quite well in his representation of the defendant considering what he had to work with. See *People* v. *Garrow*, 130 Cal.App.2d 75, 77 [276 P.2d 475]; *People* v. *Hopkins*, 214 Cal.App.2d 487 [29 Cal.Rptr. 636]. In fact, as a practical matter, if the desired result insofar as the defendant was concerned was to get released from confinement and back into society as such, the public defender did very well indeed in representing the defendant. We have called for and have examined the original record (superior court file) in this case, under the Rules on Appeal, and it is there indicated that although defendant was held to be a probable sexual psychopath and a menace to society by two well-known and recognized psychiatrists in the first instance, and although the Atascadero Hospital authorities (to which hospital defendant was committed for examination) reported

that they did not believe defendant to be a sexual psychopath, they did report that "in view of his lengthy criminal record (5 pages of rap sheet) which reflects a variety of convictions, indicated that *the defendant is a menace to society* and should be dealt with accordingly" and although the probation officer repeatedly recommended against probation for defendant, stating in part that the defendant displayed a surly, arrogant, aloof and carefree attitude and that defendant had stated in effect that becoming involved in trouble was a way of life with him and he had no intention of changing—the court at the time of sentencing the defendant granted his application for probation and shortly he will no doubt be a member of society even though he is according to the record a "menace" thereto.

The motion to dismiss the appeal is denied.

The order denying the motion for a new trial is affirmed.

Wood, P. J., and Lillie, J., concurred.