[Crim. No. 12092.   Second Dist., Div. Two.   June 1, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MARCO
FANIZZA et al., Defendants and Respondents.

Richard B. Cutler, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellants Marco Fanizza and Michael Forbes entered pleas of not guilty to two counts of robbery in violation of Penal Code, section 211. They were jointly tried before a jury. Each was found guilty of two counts of first degree robbery, the jury finding they were armed at the commission of each offense. They were sentenced to state prison, sentences as to each on the two counts to run concurrently.

At approximately 12:45 a.m. on June 3, 1965, appellants entered the restroom of the Powerine service station at Florence and Atlantic Avenues in Cudahy. A few minutes later, Fanizza came to the station office door, and asked Robert McMillen, the attendant, for some toilet paper. McMillen gave him the paper. Fanizza returned to the restroom. Both appellants then came to the office doorway and Fanizza stated: "This is a hold-up." McMillen observed a pistol tucked inside the waist-band of Forbes' pants. At appellants' direction, McMillen went with them to the restroom, gave them "all the money" (around $85) and appellants left.

At midnight on June 4, 1965, Leroy Zeller was alone in the office of the Powerine service station on East Gage in Bell. Forbes entered and informed him the men's restroom was overflowing. Zeller went with him to the restroom, saw Fanizza leaning against a portion of the building next to the restroom door, his left arm behind his back, and became suspicious. He turned to go back to his office, but was blocked by Fanizza. Forbes then pulled a .38 caliber revolver and stated: "This is a hold-up." Zeller was pushed into the restroom, relieved of approximately $25, and locked inside. A nail file was used to jam the door from the outside. Appellants left and Zeller was later released by neighbors who heard his shouts.

McMillen identified appellants from among 14 photographs shown him by police about 10 days after the robbery. He remembered seeing Fanizza at the service station once prior to

June 3 and was certain on seeing the pictures that Fanizza was one of the robbers. At the time of the robbery, Fanizza was carrying a tan raincoat over his left arm; McMillen did not mention seeing a cast on his arm. McMillen first stated he was not sure of Forbes' identity, but later, after viewing Forbes standing alone, he said he believed him to be one of the men who held him up.

Zeller identified both appellants from a series of photographs shown him on several days by police, and also picked them out of lineups. Zeller's testimony was impeached on cross-examination at the trial on the basis of testimony given at the preliminary hearing which differed as to descriptions of the robbers' clothing and the type of gun used. He also testified he did not see a cast on Fanizza's left arm.

Fanizza testified, with partial corroboration, that he was at a friend's house overnight from the evening of June 2 to late morning of June 3. He stated that on June 3 he went to Mexico for two days with some friends and at the time of the robberies, he had a large cast on his left arm. This testimony was confirmed by a doctor, his parole officer, and his sister.

Forbes testified, with partial corroboration, that on June 2, he had helped some friends move into a new house and then spent the next two nights at their home. He admitted having been at both of the Powerine stations prior to June 3 and 4 to buy gasoline, but denied having been at either station on the above dates.

Officer Wagner of the Bell Police Department testified he had two conversations with each of the appellants following their arrests. The first was with Forbes on June 11, 1965. After Forbes had been advised of his constitutional rights under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], Forbes stated he would rather not say anything until he talked to his Dad. On June 14, Officer Wagner again advised Forbes of his rights, and told him he had been identified by three witnesses as a robbery suspect. Forbes then stated: " 'Three witnesses? How come three?' " Officer Wagner admitted, although the jury was admonished to disregard the information, that he had "mentioned the three to see what reaction he [Forbes] would give me." Forbes further asked: " 'If I cop out to this—' " and later, " 'I would like to call my dad and if he tells me my best shot is to cop—well you know.' "

Officer Wagner's first conversation with Fanizza was on June 14, 1965. He advised appellant of his constitutional

rights. The officer then told him "they" were "specifically identified" as being the two suspects. Fanizza then asked: " 'What did Mike say?' " Later the same day, Wagner was told Fanizza wanted to talk to him. At this time, Fanizza stated: " 'What did Mike say? Did he cop to it? Just tell me.' " Wagner then asked whether he wanted to make a statement. Fanizza agreed. "I then said, 'Let's start with the station . . . [on] Atlantic.' Fanizza stated, 'I'm leery man.' I then stated, 'Well, it is up to you.' He then stated [,] ['I]f Mike tells me to my face he has already copped then I know it would be all right—do you know what I mean?' "

On June 15, Officer Wagner showed both appellants the nail file found at the station on Gage. He asked: "Did one of you leave that behind?" Fanizza looked at it and said: " 'It is mine.' " Right after this, he looked at it and said: " 'Oh no, it's not mine.' "

Appellants contend that the evidence of identification was inherently unbelievable.

To sustain a conviction, it is not necessary that evidence of identification of defendants be positive or free from inconsistencies. (*People* v. *Miller*, 185 Cal.App.2d 59, 68 [8 Cal.Rptr. 91]; *People* v. *Jackson*, 183 Cal.App.2d 562, 568 [6 Cal.Rptr. 884].) At bench, there was identification of both appellants by both victims. Fanizza's contention that it is "inconceivable" the witnesses could have observed him without noticing his arm cast is refuted by evidence that in the first robbery, a tan raincoat, and in the second, his posture in leaning against a wall, were successfully employed to hide his cast from view. This "failure" to observe, the circumstances of identification, the impeachment of Zeller's testimony, and any lack of certainty of identity testified to by McMillen and Zeller, were factual considerations going to weight and credibility of the evidence, and for determination by the jury. (*People* v. *Wyback*, 193 Cal.App.2d 754, 757 [14 Cal.Rptr. 501]; *People* v. *Finnegan*, 192 Cal.App.2d 151, 156 [13 Cal.Rptr. 264].) The contention that there was "no evidence" which could support their verdict is refuted by the record.

Neither challenges the admissibility of Wagner's testimony under *Dorado* rules, applicable at time of trial.

Forbes contends, however, that Fanizza's extrajudicial statements implicated him in the robberies and it was prejudicial error, under *People* v. *Aranda*, 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265], and *People* v. *Charles,*

66 Cal.2d 330 [57 Cal.Rptr. 745, 425 P.2d 545], to introduce them in the joint trial.

The *Aranda* rules are now fortified and made retroactive by *Charles, supra*. *Aranda* holds that where the prosecution proposes to introduce an extrajudicial "statement" of one defendant which "implicates" a codefendant, the trial court must: 1) effectively delete all implicating references to the codefendant if such can be done without prejudice to the declarant; or 2) grant severance of the trials if the prosecution wishes to use declarant's full statements; or 3) exclude the extrajudicial implicating statements entirely. (*People* v. *Aranda, supra*.) None of the three directives were followed.

*Charles, supra*, holds that *Aranda* rules have retroactive application to judgments of conviction not final on November 12, 1965, the date of the *Aranda* decision, if the error in the application of such rules is so prejudicial as to require reversal. (Art. VI, § 13, Cal. Const.) Failure to follow *Aranda* procedures therefore may be asserted as error in cases on direct appeal even though tried prior to November 12, 1965.[1] ■ *Aranda* rules are solely matters of state practice to implement section 1098 of the Penal Code and are not constitutionally compelled. (*People* v. *Aranda, supra*, at pp. 529-530.)

■ When the prosecution called Officer Wagner to testify to a Forbes admission, counsel for Forbes objected to Wagner's testimony of Forbes' statements on grounds of "prejudice." The court, however, properly admitted Forbes' statements as "equivocal" and for the sole purpose of showing a "consciousness of guilt." (*People* v. *Davis*, 43 Cal.2d 661, 670 [276 P.2d 801]; *People* v. *Coltrin*, 5 Cal.2d 649, 658 [55 P.2d 1161]; *People* v. *Hurley*, 151 Cal.App.2d 339, 342 [311 P.2d 49].) No objection was made by either appellant when Wagner testified to Fanizza's statements. Fanizza's statements were of the same character as the statement by Forbes. Neither of these statements were confessions (as in *People* v. *Aranda*). At most they were admissions against penal interest or showing consciousness of guilt. In *Aranda* and *Charles* the confessions admitted were wrongfully obtained. The narrow question before us is: does the fact that Fanizza's incriminating statements were good as against him since they were properly obtained, make them any less harmful as against Forbes, if, under *Aranda* rules, such statements should have been deleted, and were they prejudicial against

---

[1]Appellants' trial commenced October 4, 1965.

Forbes under the provisions of section 13, article VI, of the Constitution of our state?

Since there was no deletion of the Fanizza statement and there was no severance of trial,[2] *Aranda* procedures were clearly violated.

Although *Aranda, supra,* at pp. 526-527, points out that an instruction to "disregard" a statement as to an implicated nondeclarant is not generally an effective cure, the jury was carefully instructed to consider both Forbes' and Fanizza's statements only as to the declarant, and to disregard them as to the codefendant.

Wagner testified over objection by Forbes that in a statement made to him by Forbes that Forbes had referred to "copping out." The trial court admitted this testimony only to show consciousness of guilt.

Fanizza's statements about "copping out" did further implicate Forbes, and undoubtedly were an added link between the two defendants and did suggest that *both* were guilty. However, Fanizza only echoed what Forbes had already stated to Wagner.

On the facts at bench the language of our Supreme Court in the recent case of *People* v. *Hill,* 66 Cal.2d 536, at p. 559 [58 Cal.Rptr. 340, 426 P.2d 908], is apposite:

"When the impact of the foregoing [evidence including each appellant's own confession] is weighed against the codefendant confessions, vitiated by the trial court's instructions that the jury should not consider them as evidence against the nondeclarants (see *People* v. *Gilbert, supra,* 63 Cal.2d 690, 702), we must conclude that *there is no reasonable probability* that the jury would have returned a more favorable verdict for either Hill or Saunders if, as required by *Aranda,* they had been tried separately. (Cal. Const., art. VI, § 13; *People* v. *Charles, ante,* pp. 330, 332 [57 Cal.Rptr. 745, 425 P.2d 545]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) A reversal as to either defendant thus cannot be predicated on this ground." (Italics added.)

Weighing the erroneous admission of Fanizza's "copping

[2]Since *Charles, supra,* has made *Aranda* retroactive, and because of the forceful suggestion in *Charles* that *Aranda* rules should be applied by the trial court when required, independent of defense motion, it is clear that no request for application of *Aranda* rules re the statements of Fanizza was necessary. The question may be raised on appeal without such request. (*People* v. *Aranda, supra; Charles, supra; People* v. *Davis, supra; People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382].)

out'' statement against Forbes with all the evidence, especially that of witnesses completely independent of Wagner, and assuming that neither of the ''copping out'' statements was admitted at all, we are satisfied ''that there is no reasonable probability that the jury would have returned a more favorable verdict . . .'' (*People* v. *Hill, supra*, p. 559.); that there is no reasonable probability that the *Aranda* error, as against Forbes, contributed to his conviction.

The judgments of conviction are affirmed.

Herndon, J., and Fleming, J., concurred.